Commonwealth *v.* Clarkson, Appellant.

524

Argued January 15, 1970.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*F. Emmett Fitzpatrick, Jr.,* for appellant.

*Arthur R. Makadon,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 27, 1970:

Appellant was arrested in connection with the killing of his aunt's fiance and subsequently found guilty by a jury of murder in the second degree.   On his direct appeal he now asserts that his conviction must be reversed because the trial court permitted the prosecution to introduce into evidence the transcript of testimony given at appellant's preliminary hearing by a witness who died prior to the trial; and because the evidence was insufficient to sustain the conviction.

There was no error in admitting into evidence the transcript of the testimony given by the deceased witness. Appellant attempts to bring his case within the proscription of *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065 (1965), which held that prior testimony was admissible only if the defendant had been represented at the prior proceeding and had had the right to cross-examine witnesses. Appellant admits that these constitutional prerequisites were met, that he was represented by counsel and was given the opportunity to cross-examine witnesses, but argues that the scope of the preliminary hearing is so limited that the right of confrontation cannot adequately be protected in that context

While it is true that the focus of a preliminary hearing is narrower than that of a trial, we are not persuaded that the difference requires exclusion of the testimony taken at such a hearing. Our basic concern is for the reliability of the testimony which was elicited in the preliminary hearing, and we do not feel that its reliability is affected by the scope or focus of the proceeding. It would certainly be more desirable to have the witness present at trial, but it would be vastly less desirable to exclude such evidence altogether.[1]

The Act of May 23, 1887, P. L. 158, 19 P.S. §582,[2] does not render this testimony inadmissible, and we reaffirm those past cases in which we held that the prior admissibility of such testimony was not affected

---

[1] We note that those problems which do inhere in the use of such prior testimony can be pointed out to the jury and that a proper cautionary instruction can be given.

[2] "Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die . . . notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. . . ." Act of May 23, 1887, P. L. 158, §3, 19 P.S. §582.

by this Act. *See Commonwealth v. Ryhal*, 274 Pa. 401, 118 A. 358 (1922); *Commonwealth v. Keck*, 148 Pa. 639, 24 A. 161 (1892); *Commonwealth v. Miller*, 203 Pa. Superior Ct. 511, 201 A. 2d 256 (1964).

Appellant's contention that the evidence introduced at his trial was insufficient to sustain the conviction is without merit. The evidence demonstrated that on the evening of the killing the appellant, the decedent and appellant's aunt were present at the latter's house. At some point during the evening decedent, who had been talking with appellant's aunt in the kitchen, went into the living room, and appellant, who had also been in the kitchen, told decedent not to sit in a particular chair. Decedent sat down anyway and appellant then walked from the kitchen to where decedent was seated and bent over him. Appellant's aunt, having observed appellant's apparently peremptory behavior, then walked into the living room and ordered appellant out of the house. After escorting appellant to the front door, the aunt returned to the living room and noticed that decedent was not moving and that there was a butcher knife in the middle of the floor. She picked up the knife and discovered that the decedent was covered with blood. He was dead by the time the police arrived. The knife, which was not positively identified as the murder weapon but which could easily have caused the death-dealing wounds, was stained with blood of decedent's type.

It also appeared that appellant, after leaving his aunt's house, had waited around the corner until decedent's body was removed, and then went to the home of another aunt, with whom he resided, and told her, "I think I killed Al [the decedent]." When appellant was taken into custody he was wearing a pair of trousers with bloodstains of decedent's type on them.

This evidence is certainly sufficient to sustain the conviction. Judgment affirmed.