Lance KOHLER, Petitioner,

v.

N. Mitchell MEADE, Judge, Fayette Circuit Court, Respondent.

Court of Appeals of Kentucky.

May 5, 1972.

Richard J. Getty, Paris, for petitioner.

George E. Barker, Commonwealth Atty., Patrick H. Molloy, Asst. Commonwealth Atty., Lexington, for respondent.

## GRANTING WRIT OF PROHIBITION

Lance Kohler was called as a witness by the Commonwealth in the trial of Commonwealth of Kentucky v. Ollie Craycraft and Jack Jaggers, and upon his refusing to answer questions was held in contempt of court. His punishment was fixed at confinement in jail for six months and a fine of $1,000. He has come to this court by way of a petition for a writ of prohibition to prevent respondent judge from enforcing his contempt order.

In a previous trial Kohler was convicted of illegally selling heroin and was sentenced to 20 years' confinement and assessed a fine of $20,000. Appeal from that judgment was timely taken and was pending in this court when the contempt order was entered. The contempt citation occurred while Craycraft and Jaggers were being tried as accessories before the fact of selling heroin, for which Kohler had been convicted.

Kohler invoked the Fifth Amendment to the United States Constitution and refused to answer any questions, insisting that the answers might incriminate him. Some of the interrogation as shown by the transcript was as follows:

"DIRECT EXAMINATION by Mr. Barker: [Commonwealth Attorney]

D1 Mr. Kohler, you were previously tried in this Court, I believe, in the case of Commonwealth against Kohler, is that correct?

MR. TURRELL: Your Honor, I object to that question as it is purely leading.

THE COURT: Overruled.

A. I refuse to answer on the ground it may tend to incriminate me.

THE COURT: And the Court would order you to answer, Mr. Kohler.

MR. GETTY: [attorney for Kohler] If Your Honor please, at this time I will

again have to advise Mr. Kohler, my client, to stick by the Fifth Amendment. I think the Court is cognizant of the fact that a man can plead the Fifth Amendment at any time.

THE COURT: Yes, sir, but he has previously testified as a witness in his own case. It is the Court's ruling today that he would again have to testify on the same subject matter that he testified on before. I have ordered the Commonwealth not to ask any questions that were not previously asked him or testimony that was not previously brought out. He has waived his privilege by testifying in a previous trial on that matter which he previously testified to.

MR. GETTY: If Your Honor please, I still am going to have to advise my client to refuse to testify.

THE COURT: All right, if he refuses to answer, then the Court would have to hold him in contempt.

MR. GETTY: I realize that, Your Honor.

MR. BARKER: Will you repeat the question, please?

(Thereupon the court reporter read Question D1 to the witness.)

A. I again plead the Fifth Amendment and refuse to testify.

THE COURT: And you are doing this on advice of your attorney?

A. Yes, sir.

THE COURT: And fully realizing that the Court would hold you in contempt of Court?

A. Yes.

THE COURT: All right. Let the witness be held in contempt of Court, six months in the Fayette County Jail, $1,000.00 fine."

* * * * * *

"D2 Mr. Kohler, did you testify in the case of Commonwealth against Lance Kohler?

A. I refuse to answer on the ground it may tend to incriminate me.

D3 Were you tried in this Court in the case of Commonwealth against Lance Kohler for the offense of selling heroin to Agent Harold Brown?"

[Objections followed]

* * * * * *

"D4 On June 4, 1971, in the early morning hours at the Hospitality Inn in Lexington, Kentucky, I'll ask you if you were not arrested for the sale of heroin to Federal Agent Harold Brown?

A. I again refuse to answer.

D5 Immediately following your arrest in the Hospitality Inn on that occasion, I'll ask you if you did not make certain oral statements after having been warned of your constitutional rights to Lt. Frank Fryman, Detective Andrew Thornton, Agent Harold Brown, and Agent Robert Brightwell?

A. I again refuse to answer.

D6 I'll ask you if following your arrest on that occasion you did not go with Lt. Fryman, Detective Thornton and Agent Brown, to your apartment in Lexington, Kentucky?"

[Objection by attorney for Craycraft followed]

* * * * * *

"D7 After your arrival in your apartment in Lexington, Kentucky with the officers, Fryman, Thornton, Brown, and others, I'll ask you if you did not see the defendant, Ollie Craycraft, who came to your apartment?

MR. TURRELL: Object.

THE COURT: Overruled.

A. I again refuse to answer on the grounds it may tend to incriminate me.

D8 I'll ask you if it isn't true that prior to that time, either in the early morning hours prior to your arrest, either in the early morning hours of June 4, 1971, or in the late evening hours of June 3, 1971, if you did not see the defendant, Ollie Craycraft, in the Country Kitchen here in Lexington, Kentucky and on several other occasions and in different places in and about Lexington?

MR. TURRELL: Object.

THE COURT: Overruled.

A. I again refuse to answer on the grounds it may tend to incriminate me.

D9 I will ask you if you did not on or about 10:30 in the evening of June 3, 1971 make a telephone call to Mt. Sterling, Kentucky and talk over the telephone to the defendant, Ollie Craycraft.

A. I again refuse to answer on the grounds it may tend to incriminate me.

D10 I will ask you if approximately one month before June 4, 1971, you did not see one Bobby Otis in the Boom Boom Room here in Lexington and have a conversation with him with reference to obtaining heroin?

A. I again refuse to answer on the ground it may tend to incriminate me.

D11 I'll ask you if some short time following that you were not introduced to the defendant, Jack Jaggers, by the said Bobby Otis at your apartment, during which time you had a conversation with Jack Jaggers regarding the purchase of heroin?

A. I again refuse to answer on the grounds it may tend to incriminate me.

D12 I'll ask you if on another occasion shortly thereafter the defendant—if it isn't true that the defendant, Jack Jaggers, and Ollie Craycraft came to your apartment in Lexington, Kentucky, and you had a discussion with them concerning the price of six ounces of heroin and how much money you would receive for selling same?

A. I again refuse to answer on the grounds it would tend to incriminate me.

MR. TURRELL: May I remind the Court we have a continuing objection to all of this?

THE COURT: Yes.

MR. TURRELL: Thank you, Your Honor.

D13 I'll ask you if it isn't true that following that conversation you were contacted by telephone by the defendant, Jack Jaggers, in your apartment in Lexington concerning the sale of this heroin and when the sale would transpire? And if in the course of that conversation you were not informed that they were in a hurry to make this sale due to the fact that two of their associates were in jail someplace in New Jersey?

A. I refuse to answer both questions on the ground it would tend to incriminate me.

D14 I'll ask you if following that you were not contacted by the defendant, Ollie Craycraft, at your apartment, at which time Mr. Craycraft told you he would take $5,000.00 for two ounces of the said heroin because he needed the $5,000.00 to get the men out of jail in New Jersey?"

Interrogation along this line continued but it would serve no useful purpose to copy it in full here.

A minor argument of counsel for respondent judge is that the question, "Mr. Kohler, you were previously tried in this Court, I believe, in the case of Commonwealth against Kohler, is that correct?" could not possibly be construed as incriminating. He adds that it was at this point the judge made a ruling of contempt.

This, we believe, unduly restricts the true basis of the ruling. The written order of the court does not identify any particular question and reads in part as follows:

" * * *, the Court ORDERS and ADJUDGES as follows:

"1. That the witness, Lance Kohler, be and is hereby held in contempt of this Court for refusing to answer the questions of the Commonwealth and fixes his punishment at six months in the Fayette County Jail and a fine of $1,000.00. Said punishment shall run consecutive with the sentence presently being served by the witness, Lance Kohler."

It is obvious that the court considered all the interrogation and not just the question as to whether Kohler had been tried before in holding Kohler in contempt of court.

Undoubtedly answers to many of the questions would incriminate Kohler. The interrogator delved into the area of Kohler's participating in dealing in heroin, involving the very facts by which he was convicted. The point of consideration is whether Kohler's conviction of illegally selling heroin, which case was pending on appeal, precluded his claiming immunity as a witness in the trial where Craycraft and Jaggers were being tried as accessories before the fact. We believe it did not, even if the questions asked were identical with those presented at Kohler's own trial. Our view is supported by Holsen v. United States, 392 F.2d 292 (C.A. 5th Cir. 1968); Mills v. United States, 281 F.2d 736 (C.A. 4th Cir. 1960); State v. Johnson, 77 Idaho 1, 287 P.2d 425 (1955), and 8 Wigmore, Evidence, section 2268, at 410 (McNaughton Rev. 1961). A different conclusion would be reached, of course, if there was no pending appeal, for in that instance the conviction would be final. Shelton v. Commonwealth, Ky., 471 S.W.2d 716 (1971).

The petition is sustained and the writ of prohibition is granted.

STEINFELD, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE and REED, JJ., concur.