372 A.2d 771

**COMMONWEALTH of Pennsylvania**

v.

**James RODGERS, a/k/a James Henderson, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 1, 1976.

Decided April 28, 1977.

436

438

440

Ronald J. Brockington, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

On February 9, 1973, appellant James Rodgers, also known as James Henderson, was arrested for the 1969 murder of Frank Geter. He was charged with murder, aggravated robbery and burglary. After a hearing on appellant's motion to suppress evidence,[1] appellant was

---

1. The motion to suppress a statement given to the police by appellant was denied. The motion to suppress identification testimony was granted in part and denied in part. See Part II, infra.

tried before a jury and convicted of murder of the first degree, aggravated robbery and burglary. His post-trial motions for a new trial and in arrest of judgment were denied. He was sentenced to concurrent sentences of life imprisonment on the murder charge, and five to twenty years imprisonment on the robbery charge and three to ten years on the burglary charge. In this appeal,[2] appellant raises numerous grounds for reversal of his conviction. We find no merit in appellant's contentions and affirm the judgments of sentence.

## I—Sufficiency of the Evidence

Appellant contends that the evidence was not sufficient to prove him guilty beyond a reasonable doubt.

In passing upon the sufficiency of the evidence, we consider the evidence in the light most favorable to the Commonwealth. E. g., *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976); *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573, *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975). The test of sufficiency of the evidence is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the fact-finder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. E. g., *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Johnson*, 458 Pa. 23, 326 A.2d 315 (1974).

Viewed in the light most favorable to the Commonwealth, the record reveals: During the afternoon of

2. This Court has jurisdiction over the appeal from the murder conviction pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976). The robbery and burglary convictions were appealed to the Superior Court which certified the appeals to this Court.

May 28, 1969, Josephine Weems encountered appellant and Otis Ferguson. That evening, she again met appellant and Ferguson while en route to the home of Frank Geter. Weems was looking for her friend Daisy Pough and thought she might be at Geter's house. Appellant and Ferguson accompanied Weems and waited at the street corner near Geter's home. Weems entered Geter's house, learned that Pough was not there and left a message for her. She departed and again encountered appellant and Ferguson. One of the men asked her if Geter had any money at home. During the ensuing conversation, the men discussed robbing Geter. After ten or fifteen minutes, Weems left.

Later that night, Weems was again in the neighborhood where Geter lived and heard a scraping noise. She observed a person at Geter's window. When the person approached her she recognized him as appellant. Weems and appellant walked to the corner where they awakened Ferguson, who was sleeping on the step of a building. Appellant and Ferguson discussed a plan to enter Geter's house. They instructed Weems to act as a lookout.

Appellant entered Geter's house through the front window and opened the front door for Ferguson. Weems heard Geter shout, "Get out of my house." Later, Ferguson and appellant left the house and rejoined Weems. Ferguson was carrying a basket filled with beer and a large blood-stained knife. One of the two men had a jar of pennies. The three walked down the street and stopped near a doorstep where appellant counted 103 pennies and gave them to Weems. The three then separated.

The next day Geter's body was discovered in his apartment. He had been stabbed eight times. The conditions in the house indicated that it had been ransacked. Weems was arrested shortly thereafter and gave a statement to the police implicating appellant in the crime. A

warrant issued for his arrest, but he was not apprehended until February 9, 1973.

We conclude there was sufficient evidence for the jury to find appellant guilty of all charges.[3]

## II—The Motion to Suppress

### A. *The In-Court Identification*

At the suppression hearing, appellant moved to suppress any in-court identification of appellant by Josephine Weems. The suppression court denied his motion and at appellant's trial Weems identified him as a participant in the Geter robbery-murder. Appellant asserts that the in-court identification should have been suppressed because it was tainted by a prior illegal identification. We do not agree.

On the night Weems was arrested, she identified a photograph of appellant from a group of photographs shown to her by the police. Appellant does not contend that this photographic display was suggestive. Weems later testified at appellant's preliminary hearing on February 28, 1973, more than three years after the crime. She was unable to identify appellant at that time:

"[The prosecutor] : Q. Do you know the defendant in this case, James Rogers?

[Weems]: A. No, I don't know James Rogers.

Q. Do you know the man that is sitting here next to Mr. Gottlieb [defense counsel] ? Stand up if you have to see him.

---

3. The Commonwealth's theory was that appellant was guilty of either premeditated murder or felony-murder based upon accomplice liability. See generally *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972). Appellant was tried under the Penal Code of 1939, in which felony-murder was classified as murder of the first degree. Act of June 24, 1939, P.L. 872, § 701, formerly codified as 18 P.S. § 4701 (1963), repealed by Act of December 6, 1972, P.L. 1482, § 5. Felony-murder is presently classified as murder of the second degree. 18 Pa.C.S.A. § 2502(b) (Supp.1976).

A. I can't see him good from over here because I wear glasses.

. . . . . . . .

His face don't look familiar."

In the interim between the preliminary hearing and the suppression hearing, Weems told the prosecutor that she was not sure whether she could identify appellant in court. On the day before the suppression hearing, Weems was shown two photographs in the prosecutor's office. She recognized them as copies of the same photograph that she had seen at the police station on the night of her arrest in 1969. She then felt better about her chances of identifying appellant in court.

Weems positively identified appellant at the suppression hearing the next day. She explained that she was unable to identify appellant at the preliminary hearing because she has poor eyesight and was not wearing her glasses.[4] She stated that he looked different at the preliminary hearing than she remembered him, but that she now recognized him. Weems further testified that she knew appellant for about five years before the night of the crime, although she had seen him only once or twice.

The trial court ruled the out-of-court identification in the prosecutor's office improper and suppressed that identification. The court found, however, that Weems' ability to identify appellant was not tainted by the improper out-of-court identification. At trial, Weems again positively identified appellant as a participant in the robbery-murder.

■ Following a suggestive pre-trial identification procedure, a witness will not be permitted to make an

---

4. Weems did not wear her glasses at either the suppression hearing or the trial. On both occasions, unlike the preliminary hearing, she left the witness stand and walked to a position where she could see appellant clearly.

in-court identification unless the prosecution establishes by clear and convincing evidence that the in-court identification has an independent origin in the witness' observations at the time of the crime and was not induced by events occurring between the time of the crime and the in-court identification. See *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976) (plurality opinion).

■ Here, there was clear and convincing evidence that Weems' in-court identification was independent of the improper identification in the prosecutor's office. It is significant that the identification was made by a participant in the crime. On the day of the crime, Weems observed and conversed with appellant on several occasions; she had excellent opportunities to form a mental image of his appearance. Moreover, she testified that she knew him for five years before the crime, although their contact was infrequent. At the suppression hearing, Weems gave a satisfactory explanation for her inability to identify appellant at the preliminary hearing and the notes from the preliminary hearing corroborate her explanation. The record also indicates that Weems' fear that she would not be able to identify appellant may well have stemmed from nervousness about appearing in court rather than a faulty memory. Finally, she unequivocally stated that she remembered appellant from the night of the crime, not from the photograph she saw at the station house and the prosecutor's office.

"[The Court]: Q. [A]re you saying that . . . you remember him solely from the fact that he was with you that night or are you saying that this is the man because of you seeing the photograph of him five years ago or yesterday?

[Weems]: A. I remember him from that night, from the incident, because he looks like hisself now, but like before, like I said, he didn't look like him. For one thing, I couldn't see him.

Q. At the [preliminary] hearing?

A. Yes.

Q. Well, aside from that, I want to know from you today, in saying this was the man that was with you and Otis on May the 29—

A. Yes.

Q. —are you saying that because you recognized him as being with you that night or are you saying that because you recognized him as the person who was in the photograph that you have seen since then?

A. No, I recognize him from that night.

Q. You are sure?

A. Yes."

On these facts, we will not disturb the suppression court's determination that Weems' in-court identification had an independent origin.

B. *Appellant's Statement to the Police*

■ Appellant also moved to suppress a statement he gave to the police on the day of his arrest. The relevant facts are summarized below.

After Josephine Weems implicated appellant in the crime, a warrant for his arrest issued. The warrant stated that the accused's nickname was Tubby. Appellant could not be located and was not apprehended until February 9, 1973. He was taken into custody by the F. B.I. and turned over to the Philadelphia police, who brought him to the Police Administration Building. At the PAB, after conferring with counsel, appellant exercised his right to remain silent. Thereafter, in the absence of counsel, a detective questioned appellant for the

purpose of filling out an information summary, printed police form 229. The information sought included appellant's name, address, birth date, height, weight, marital status, religion, and social security number.

When appellant was asked his name, he responded that it was James Henderson. He then stated that his real name was James Rodgers. The detective filling out the form asked appellant if he had any nicknames. Appellant said he was called Tubby.

Appellant asserts these statements were incriminatory and should have been suppressed because they were obtained in violation of *Miranda v. Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See *Brewer v. Williams,* —— U.S. ——, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977) (Opinion announcing the judgment of the Court). Appellant's brief does not specify how the detective's testimony allegedly prejudiced him. It would appear that the only source of prejudice was the evidence that his nickname is Tubby, not that his real name is Rodgers or his alias is Henderson.

At the suppression hearing, the detective testified that he asked the last question to be sure that appellant was the person for whom the arrest warrant issued. The suppression court denied appellant's motion to suppress his statements concerning his three names because it determined that the information was not obtained for an investigative purpose, but rather to determine if the police "had the right man in custody, not insofar as the man involved in the case, but insofar as the man the warrant said was wanted." At trial, the detective testified that appellant identified himself after his arrest as James Rodgers and Tubby. The prosecution made no further reference to these statements during the trial.

We conclude that if admission of the detective's testimony was error, it was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct.

824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). The testimony was merely cumulative of other untainted evidence which established appellant's names and aliases. Each one of appellant's four sisters, who testified on his behalf, acknowledged that his nickname was Tubby. Thus, even without the detective's testimony, the jury was informed that appellant was known as Tubby. On these facts we find that any error committed in admitting the detective's testimony was harmless beyond a reasonable doubt.

The common application of the harmless error doctrine involves the inquiry whether the error might have contributed to the guilty verdict. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Here, the jury may have concluded that evidence that appellant's nickname was Tubby bolstered the credibility and reliability of the testimony and in-court identification given by the prosecution's key witness, Josephine Weems. Thus, we are unable to say that the challenged evidence could not have contributed to the verdict. Under the "cumulative evidence" approach to harmless error, however, errors may be found harmless which might otherwise appear to have contributed to the verdict. See *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). For an excellent discussion of the relationship among the various approaches to the harmless error doctrine, see Field, Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale, 125 U.Pa.L.Rev. 15 (1976).

Professor Field has suggested that three requirements must be met before an error may be found harmless under the cumulative evidence test:

"(1) There should be substantial similarity, in type of evidence and incriminating factual details, between the tainted evidence and the untainted evidence of which it is 'cumulative.' (2) The untainted evidence

should be indisputable, either because the facts are in some way affirmatively accepted by the defendant or for other reasons. (3) Care should be taken that the 'untainted' evidence in no way derives from the tainted evidence."

Id. at 55. Put another way, the cumulative evidence test "would limit harmlessness to situations in which the unconstitutionally admitted evidence in retrospect was wholly unnecessary." Id. at 46.

We find substantial similarity between the detective's testimony and the testimony of members of appellant's immediate family concerning his name and nickname. The information provided, that appellant's nickname was Tubby, is not the type of evidence which can reasonably be expected to have greater impact on the factfinder because it was admitted by appellant rather than his four sisters. In addition, considering the source of the evidence, i. e., appellant's sisters called as defense witnesses, the untainted evidence was effectively beyond dispute. Finally, while it may be unusual for the prosecution to develop the untainted evidence during cross-examination of defense witnesses, we are convinced that on the facts of this case the untainted evidence in no way derived from the allegedly tainted evidence. Appellant's sisters surely did not take the stand in response to the detective's challenged testimony; nor do we find it conceivable that they would not have testified if the detective's testimony had been ruled inadmissible. Compare *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 La. Ed.2d 1047 (1968). They were called as alibi witnesses as part of a defense strategy wholly unrelated to the testimony that appellant's nickname was Tubby.

III—Admissibility of the Notes of Testimony from Appellant's Preliminary Hearing

After the Commonwealth closed its case-in-chief, appellant put on a defense of alibi. Five witnesses, includ-

ing four of appellant's sisters, testified that during the time the crime took place, appellant was attending a birthday party in his honor some distance from the victim's house. In rebuttal, the Commonwealth called Otis Ferguson, one of the alleged participants in the crime. Out of the presence of the jury, Ferguson testified that he had been convicted of the murder of Frank Geter and was serving a term of life imprisonment. He stated that his conviction had been affirmed by the Pennsylvania Supreme Court and that relief had been denied by the United States Supreme Court.[5] He then refused to testify on the basis of the privilege against self-incrimination, U.S.Const. amend. V; Pa.Const. art. I, § 9, because he was preparing a petition for "habeas" relief. Over the Commonwealth's objection, the trial court sustained Ferguson's assertion of privilege.

Over appellant's objection, the prosecutor was permitted to read into evidence Ferguson's testimony from appellant's preliminary hearing.[6] Appellant had a full opportunity to cross-examine Ferguson at the preliminary hearing. The following was read to the jury:

"[The prosecutor]: Q. Who went into Mr. Frank [Geter's] house with you and robbed and killed Mr. Getter [sic] . . .?

5. See *Commonwealth v. Ferguson*, 444 Pa. 478, 282 A.2d 378 (1971). We are unable to find any indication that appellant sought review of his conviction in the United States Supreme Court.

6. The waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in an independent proceeding. *Commonwealth v. Fisher*, 398 Pa. 237, 157 A.2d 207 (1960); *Ottomano v. United States*, 468 F.2d 269 (1st Cir. 1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *United States v. Miranti*, 253 F.2d 135 (2d Cir. 1958); *In re Neff*, 206 F.2d 149 (3d Cir. 1953); *Poretto v. United States*, 196 F.2d 392 (5th Cir. 1952); 8 J. Wigmore, Evidence § 2276, at 471–72 (McNaughton rev. ed. 1961). But see *Ellis v. United States*, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969). Thus, Ferguson's testimony at appellant's preliminary hearing did not affect Ferguson's right to claim the privilege at appellant's trial.

[Ferguson]: A. Can you put that another way, sir?

Q. Who was with you?

A. It was me, Josephine and Henderson. We went into the house.

Q. Josephine and Henderson?

A. Yes.

Q. Is that the Josephine Weems that was just on the witness stand?

A. Yes.

Q. The Henderson, is that the defendant, James Rogers?

A. Yes."

Appellant asserts that admission of the notes of testimony was improper because the trial court erred in permitting Ferguson to invoke the privilege against self-incrimination. Appellant claims that admission of the notes of testimony came within no recognized exception to the hearsay rule and violated his right to confront witnesses against him. U.S.Const.Amend. VI; Pa. Const. art. I, § 9. We do not agree.

It is well established that the prior testimony from a preliminary hearing of an unavailable witness is admissible at trial, provided that the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding.[7] *California v. Green,*

7. Appellant and the Commonwealth have both incorrectly assumed that the admissibility of the notes of testimony from appellant's preliminary hearing is governed by the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964), which provides:

"Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue; but, for the

399 U.S. 49, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Commonwealth v. Duncan*, 470 Pa. 212, 368 A.2d 269 (1976); *Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970); *Commonwealth v. Ryhal*, 274 Pa. 401, 118 A. 358 (1922); *Commonwealth v. Hall*, 232 Pa.Super. 412, 334 A.2d 710 (1975); *Commonwealth v. Miller*, 203 Pa. Super. 511, 201 A.2d 256 (1964). A witness who invokes the privilege against self-incrimination is "unavailable" for purposes of the hearsay exception permitting the introduction of the notes of his testimony from a prior judicial proceeding. 5 J. Wigmore, Evidence § 1409 (Chadbourn rev. ed. 1974); *Park v. Huff*, 506 F.2d 849 (5th Cir. 1975); *United States v. Milano*, 443 F.2d 1022 (10th Cir. 1971); *United States v. Allen*, 409 F.2d 611 (10th Cir. 1969); *Mason v. United States*, 408 F.2d 903 (10th Cir. 1969), cert. denied, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); *Johnson v. People*, 152 Colo. 586, 384 P.2d 454 (1963) (the true test of unavailability is the unavailability of the witness' testimony, not his or her person); *State v. Dotch*, La., 298 So.2d 742 (1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 657 (1975); *State v. Rawls*, 252 Or. 556, 451 P.2d 127 (1969); *State v. Solomon*, 5 Wash.App. 412, 487 P.2d 643 (1971). Cf. 19 P.S. § 582 (1964) (witness' testimony from prior proceeding in a "court of record" is admissible if the accused had the opportunity to cross-examine

purpose of contradicting a witness, the testimony given by him in another or in a former proceeding may be orally proved." This statute is not applicable because a preliminary hearing is not a proceeding "before a court of record" within the meaning of the statute. *Commonwealth v. Velasquez*, 449 Pa. 599, 603 n. 4, 296 A.2d 768, 770 n. 4 (1972); *Commonwealth v. Lenousky*, 206 Pa. 277, 55 A. 977 (1903). The common law rule permitting the admission of the notes of testimony from a preliminary hearing in which the accused had a full opportunity to cross-examine the witness, however, was not affected by the Act of 1887. *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977); *Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970); *Commonwealth v. Ryhal*, 274 Pa. 401, 118 A. 358 (1922); *Commonwealth v. Hall*, 232 Pa.Super. 412, 334 A.2d 710 (1975); *Commonwealth v. Miller*, 203 Pa.Super. 511, 201 A.2d 256 (1964).

the witness, the two proceedings involve the same criminal issue and the witness becomes "incompetent to testify for any legally sufficient reason"); *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975) (plurality opinion) (witness who invokes the privilege against self-incrimination is unavailable for purposes of hearsay exception for declarations against penal interest).

Appellant asserts that a witness who is erroneously permitted by the trial court to invoke the privilege against self-incrimination is not "unavailable." He claims that the trial court erred in ruling that Ferguson could invoke the privilege because Ferguson had been convicted for the transaction out of which the privilege was claimed and had exhausted his direct appellate remedies. We conclude, however, that the trial court committed no error in allowing Ferguson to invoke the privilege at appellant's trial.

The question presented is one of first impression in Pennsylvania: whether a witness whose conviction has been finalized on direct appeal and who is preparing to seek collateral relief may invoke the privilege against self-incrimination and refuse to testify concerning the crime for which he was convicted. See *Commonwealth v. Davenport*, 453 Pa. 235, 239–40 n. 4, 308 A.2d 85, 87 n. 4 (1973) (plurality opinion).

We recognize that broad statements may be found to the effect that once convicted, a witness may no longer claim the privilege against self-incrimination and can be compelled to testify about the transaction in question. See 8 J. Wigmore, Evidence § 2279 (McNaughton rev. ed. 1961); *United States v. Hoffman*, 385 F.2d 501 (7th Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); *United States v. Gernie*, 252 F.2d 664 (2d Cir. 1958); *United States v. Romero*, 249 F.2d 371 (2d Cir. 1957); *Wyman v. DeGregory*, 100 N.H. 163, 121 A.2d 805 (1956); *Cherb v. State*, 472 S.W.2d 273 (Tex.Crim.App.1971). The rationale is that "[a] convic-

tion for the crime discharges all liability to the state and removes the possibility of further penalty; hence an act for which the person has been convicted no longer tends to incriminate, in the sense of the privilege." 8 J. Wigmore, Evidence § 2279, at 481 (McNaughton rev. ed. 1961).

The broad assertion in the above-cited authorities, however, requires refinement. After conviction, direct appeal and collateral remedies available to an individual may result in a new trial. It is apparent, then, that a conviction does not eliminate the possibility that an individual will later be prosecuted for the crime about which he is asked to testify. Accordingly, the weight of authority permits a witness whose conviction has not been finalized on direct appeal to invoke the privilege against self-incrimination and refuse to testify about the subject matter which formed the basis of his conviction. *Ottomano v. United States*, 468 F.2d 269 (1st Cir. 1972) (appeal pending); *Mills v. United States*, 281 F.2d 736 (4th Cir. 1960) (time for taking appeal had not run); *State v. Johnson*, 77 Idaho 1, 287 P.2d 425 (1955) (appeal pending), cert. denied, 350 U.S. 1007, 76 S.Ct. 649, 100 L.Ed. 869 (1956); *People v. Hartley*, 22 Ill.App.3d 108, 317 N.E.2d 57 (1974) (post-trial motions pending); *v. Johnson*, 77 Idaho 1, 287 P.2d 425 (1955) (appeal *Kohler v. Meade*, 479 S.W.2d 885 (Ky.1972) (appeal pending); *McClain v. State*, 10 Md.App. 106, 268 A.2d 572 (1970) (appeal pending); *People v. Den Uyl*, 318 Mich. 645, 29 N.W.2d 284 (1947) (appeal pending); *People v. Smith*, 34 Mich.App. 205, 191 N.W.2d 392 (1971) (sentence not yet imposed after guilty plea); *State v. Tyson*, 43 N.J. 411, 204 A.2d 864 (1964) (sentence not yet imposed after guilty plea); *Knight v. Maybee*, 44 Misc.2d 152, 253 N.Y.S.2d 59 (Sup.Ct.1964) (appeal pending); *Davis v. State*, 501 S.W.2d 629 (Tex. Crim.App.1973) (appeal pending). But see *In re Bando*, 20 F.R.D. 610 (S.D.N.Y.1957) (writ of certiorari

pending in United States Supreme Court), rev'd on other grounds sub nom., *United States v. Miranti*, 253 F.2d 135 (2d Cir. 1958); *Knox v. State*, 234 Md. 203, 198 A.2d 285 (1964) (sentence not yet imposed after guilty plea); *Oliver v. State*, 85 Nev. 418, 456 P.2d 431 (1969) (sentence not yet imposed after guilty plea).

Appellant argues that a witness whose conviction is final but who is seeking collateral relief cannot invoke the privilege against self-incrimination. We conclude that the privilege is not adequately protected by such a mechanistic rule.

The privilege against self-incrimination is "accorded liberal construction in favor of the right it was intended to secure" and may be claimed when a witness "has reasonable cause to apprehend danger" from answering questions put to him. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). In *Commonwealth v. Carrera*, 424 Pa. 551, 553-54, 227 A.2d 627, 629 (1967), this Court stated in an unanimous opinion:

> "When an individual . . . is called to testify . . . in a judicial proceeding, he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded cannot possibly have such tendency . . . ." (emphasis in original)

Accord, *Hoffman v. United States*, supra; *Commonwealth v. Hawthorne*, 428 Pa. 260, 236 A.2d 519 (1968).

 We cannot say that the possibility that an individual whose conviction is final will obtain collateral relief is so remote as to warrant a per se rule that the privilege cannot be invoked in any circumstance. We therefore reject the suggestion that a witness who is preparing a collateral attack on his conviction has no basis, as a matter of law to apprehend a danger of future prosecution arising from the matters about which he is called to testify. Each case must be decided on its own facts and the information available to the trial judge who must rule on the claim of privilege.

We hold that the determination whether a witness whose conviction has been finalized on appeal and who is preparing a collateral attack may invoke the privilege against self-incrimination is properly left to the sound discretion of the trial court. The trial court must consider all the circumstances and decide whether the witness has reasonable cause to apprehend danger of self-incrimination. See *Commonwealth v. Carrera*, supra.

 Our holding today is simply an application of the established procedure for judicial administration of witnesses' claims of privilege. See *Commonwealth v. Carrera*, supra. Given the fundamental values inhering in the privilege against self-incrimination, see *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), and the liberal treatment accorded such claims of privilege, a trial court's ruling sustaining a witness' claim will not be disturbed absent an abuse of discretion.

 Here, Ferguson told the court that his habeas petition was in preparation and invoked the privilege. Ferguson also told the court that his conviction had been affirmed on appeal about a year and a half prior to appellant's trial. The trial court then conferred with Ferguson's attorney in chambers. On the basis of its discus-

sion with counsel, the trial court ruled that Ferguson could assert the privilege against self-incrimination.

The record bears no indication that appellant's collateral attack appeared to be patently frivolous. We find that the trial court did not abuse its discretion in permitting Ferguson to invoke the privilege.[8] Therefore, Ferguson was unavailable and the trial court committed no error in permitting the prosecution to read the notes of Ferguson's testimony from appellant's preliminary hearing to the jury.[9]

## IV—Cross-Examination of Defense Witnesses

As stated above, after the prosecution rested, appellant put on an alibi defense. Five witnesses testified that they were with appellant at a party in honor of his birthday at the time the crime was committed. Over defense objection, the prosecutor asked two of these witnesses, during cross-examination, whether they had ever gone to the police to tell them that appellant was at a party with them on the night Frank Geter was killed. Appellant asserts that these questions were improper because the law imposes no duty upon a person who may become an alibi witness to come forward to the police. This contention is without merit. The line of questioning went to the witnesses' credibility, a proper area of cross-examination.

The record indicates that the two witnesses, who were appellant's sisters, were aware prior to appellant's arrest

8. It would be preferable for the trial court to state on the record its reasons for sustaining the claim of privilege.

9. Appellant also asserts that the evidence should not have been admitted in rebuttal because it merely reaffirmed the Commonwealth's case-in-chief. This claim is without merit. Evidence may be offered in rebuttal to contradict evidence offered by the defense. Here, Ferguson's testimony contradicted appellant's alibi. Its introduction in rebuttal is not reversible error merely because it could have been offered during the Commonwealth's case-in-chief. *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973).

that the police were looking for him. After his arrest, they learned that the time of the crime coincided with the alleged birthday party. The thrust of the challenged cross-examination was that if appellant had been with these witnesses at the time of the murder, they might have informed the police that appellant could not possibly have committed the crime. That they had no duty to come forward does not render the question improper or irrelevant. Their failure to come forward could support an inference that their alibi testimony was fabricated for trial. Thus, these questions on cross-examination were permissible because they tended to impeach the witnesses' credibility. See J. McCormick, Evidence § 29 (2d ed. 1972) ; 2 G. Henry, Pennsylvania Evidence § 815 (1953). Appellant was free to develop the reasons for their inaction on redirect examination. The determination whether these witnesses were credible was for the jury.

The trial court correctly permitted this line of cross-examination.

V—Other Claims

Appellant raises five claims involving alleged errors in the jury charge: the trial court erred in (1) charging the jury on the law of flight; (2) refusing to charge the jury that appellant had no duty to turn himself in to the authorities; [10] (3) charging the jury that the testimony of Ferguson could be considered as identification testimony; (4) failing to instruct the jury that they could not consider that appellant did not make greater use of that material allegedly available to impeach Josephine Weems' testimony; (5) failing to repeat the definition of reasonable doubt after the jury returned with questions relating to the absence of Otis Ferguson. Appellant also asserts that the trial court erred in denying a pro se defense petition to dismiss the

10. The record reveals that this charge was given.

first degree murder prosecution since the Commonwealth previously certified that Josephine Weems' offense rose no higher than murder of the second degree.

After examining the record, we conclude that these claims are devoid of merit.

Judgments of sentence affirmed.

EAGEN, C. J., and POMEROY, J., concur in the result.

NIX, J., filed a concurring and dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

JONES, Former C. J., did not participate in the decision of this case.

NIX, Justice, concurring and dissenting.

While I agree with the result reached by the majority in Part II B of its opinion that the alleged *Miranda* violation was in any event harmless error, I cannot accept the dichotomy which the opinion seeks to draw in its discussion of the harmless error doctrine. In my view such a distinction is for all practical purposes non-existent. As discussed by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), the concept of harmless error represents a determination by a court that although testimony has been erroneously admitted at trial, it is clear beyond a reasonable doubt that it in no way influenced the verdict. Whether that conclusion is reached as a result of a finding that the impact of the challenged evidence is *de minimis* or whether the evidence supports a fact already established and is therefore no longer in dispute, the final result is identical in both cases. *See Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23

L.Ed.2d 284 (1969). Thus, the ultimate test is whether, in fact, it can be said beyond a reasonable doubt that the evidence in question did not influence the verdict. *Milton v. Wainwright, supra; Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California, supra; Chapman v. California, supra; Commonwealth v. Hale,* 467 Pa. 293, 356 A.2d 756 (1976); *Commonwealth v. Bullard,* 465 Pa. 341, 350 A. 2d 797 (1976); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973).

Additionally, I am compelled to comment upon Part III of the majority opinion concerning the admissibility of the notes of testimony from the preliminary hearing. First, the majority appears to accept a per se rule that prior testimony from a preliminary hearing of an unavailable witness is admissible at trial provided that defendant had counsel to cross-examine the witness during the earlier proceeding. While I am in agreement that such testimony should be admissible provided there has been a full opportunity to cross-examine the witness at the prior hearing, I believe that such an opportunity usually does not exist at this proceeding. As expressed in my concurring opinion in *Commonwealth v. Stasko,* 471 Pa. 373, 370 A.2d 350 (1977), due to the limited opportunity for pre-trial discovery in this jurisdiction, the preliminary hearing has become a vehicle through which the defense attempts to glean information from the Commonwealth's witnesses. Rarely, however, is it used for the purpose of impeaching these individuals. Therefore, before such evidence is admissible at trial, there should first be a thorough review of the testimony of the witness during the preliminary hearing. Only if it is determined that cross-examination was in fact employed to attack the witness' credibility at that proceeding should the testimony be admitted. However, I need not make a judgment in the instant case since I do not believe the witness was unavailable at the time of trial.

462

As noted by the majority, there is long-standing support for the view that upon conviction and imposition of sentence a witness may no longer claim the privilege against self-incrimination and may be compelled to testify about the transaction in question. *Reina v. United States,* 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960); *United States v. Hoffman,* 385 F.2d 501 (7th Cir. 1967) cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); *United States v. Gernie,* 252 F.2d 664 (2d Cir. 1958); *United States v. Romero,* 249 F.2d 371 (2d Cir. 1957); *United States v. Cioffi,* 242 F.2d 473 (2nd Cir. 1957); *Commonwealth v. Tracey,* 137 Pa.Super. 221, 8 A.2d 622 (1939); *Cherb v. State,* Tex.Cr.App., 472 S. W.2d 273 (1973). *See also* Wigmore, Evidence § 2279 (McNaughton rev. ed. 1961). Additionally, there are those authorities which hold that the privilege should be extended while a direct appeal is actually pending on the conviction. *See e. g., Ottomano v. United States,* 468 F. 2d 269 (1st Cir. 1972); *Mills v. United States,* 281 F.2d 736 (4th Cir. 1960); *Kohler v. Meade,* Ky.App., 479 S. W.2d 885 (1972); *McClain v. State,* 10 Md.App. 106, 268 A.2d 572 (1970).

However, the majority today attempts to further extend the privilege against self-incrimination to those instances in which the witness has exhausted his right of direct appeal and merely expresses the intention of seeking collateral relief some time in the future. In my view, such an extension is unwarranted and without any basis for support. To allow this protection to an individual upon the possibility that he may, at some future time, attempt to attack the judgment of sentence collaterally would make any final resolution of the issue of his availability impossible since the witness could always make such a representation to the court. Moreover, despite the majority's attempt to restrict the privilege to those collateral attacks which are not "patently frivolous", such a standard provides no limitation at all. Since

there is no way to ascertain when a future change in the law might provide a basis for some form of collateral relief, the witness would in fact enjoy the privilege indefinitely.

I believe that such an unwarranted and unreasonable extension of the Fifth Amendment protection was never envisioned by the framers of the Constitution. Nor can I perceive of any reason for this jurisdiction to embrace such a novel approach.

In the instant case, I do not believe the privilege was properly invoked nor that the witness was unavailable and therefore, his prior testimony should not have been admitted at trial. Further, in view of the fact that this testimony supplied direct evidence of appellant's actual presence in the home of the victim and his participation in the homicide, I cannot conclude the error was harmless beyond a reasonable doubt.

Accordingly, I would reverse the judgment of sentence and award a new trial.

MANDERINO, Justice, dissenting.

The majority opinion, in footnote seven, concludes that the "appellant and the Commonwealth have both incorrectly assumed that the inadmissibility of the notes of testimony from appellant's preliminary hearing is governed by the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964)." The opinion then goes on to apply the common law rule permitting the admission of the notes of testimony from a preliminary hearing in which the accused had a full opportunity to cross-examine the witness.

Whether the testimony is offered as a common law exception, or a statutory exception to the hearsay rule is *irrelevant* in terms of a defendant's right to confront witnesses as guaranteed by both the Federal and Pennsylvania constitutions.

As I noted in my dissent in *Commonwealth v. Velasquez*, 449 Pa. 599, 296 A.2d 768 (1972):

"In the most ideal circumstances, the admissibility in a trial of prior reported testimony would not compromise the traditional rights, either evidential or constitutional, of the innocent if the prior reported testimony was properly admissible under identical circumstances in the earlier proceeding. The important and significant identical circumstances would include:

1. Identity of the action

2. Identity of the tribunal's jurisdiction

3. Identity of the parties

4. Identity of counsel

5. Identity of the proponent and opponent of the testimony

6. Identity of all issues in the action

7. Identity of the issue on which the evidence is offered

8. Identity of the potential consequences of the action to the defendant

9. Identity of the opportunity to cross-examine

If any of the above identities are missing, close scrutiny is required to insure fairness to the innocent. For example, although the *opportunity* to cross-examine is the same in the present proceeding as in the earlier proceeding, the *exercise* by counsel *of the opportunity to cross-examine may not be the same* because the potential consequences of the actions to the defendant are vastly different. Motivation for human conduct is at all times determined by that which is at stake. The loss of a peppercorn is not the loss of liberty—and the loss of liberty is not the loss of life." (Emphasis added.)

I cannot conclude that the motive for cross-examination at the preliminary hearing and the motive for

cross-examination at the trial would lead to an "identity of the opportunity to cross-examine" and therefore I would exclude the notes of testimony taken at the preliminary hearing.