## Commonwealth v. Saunders

*Ronald T. Williamson*, *Assistant District Attorney*, for Commonwealth.
*John P. Gregg*, for defendant.

STANZIANI, *J.*, April 14, 1978—

## CASE SUMMARY

On April 28, 1977, Stanley Saunders, defendant herein, filed motions for new trial and in arrest of judgment following his conviction on April 22, 1977, of indecent assault, corruption of the morals of a minor, and criminal conspiracy to commit rape. On December 27, 1977, these motions were denied and defendant was sentenced on January 27, 1978, to pay costs of prosecution and undergo imprisonment for not less than three nor more than ten years. Defendant filed this appeal on February 10, 1978, raising various issues of law which are addressed in this opinion.

## FACTS

During the early morning hours of December 5, 1976, Mary T. Henkels, a 15-year-old female, was physically threatened and raped by two young males in the Roslyn section of Abington Township, Montgomery County, Pa. Later that day, Abington police located an automobile fitting the description given by the victim which belonged to Noah T. Carter. A search was made of the vehicle with Mr. Carter's consent and items of the victim's jewelry and clothing, together with expended sanitary tampons used by the victim were discovered in the back seat. Mr. Carter was arrested and charged with rape, conspiracy, and related morals offenses. On April 11, 1977, he pled guilty to charges of rape and conspiracy to commit rape before this court.

On December 7, 1976, defendant overheard Detective Lewis of the Abington police discussing the investigation of the case with several friends at the

Crestmont Country Club. Defendant requested Detective Lewis, who was a personal friend, to step outside so that they could speak in private. After leaving the club, they entered Detective Lewis' car and the defendant said to the detective, "That other dude you were looking for is me." Defendant then explained that Carter had picked him up on the early morning of December 5 outside the Crestmont Country Club, but that he was unaware of the victim's presence in Carter's car until they had driven some distance and he heard her sobbing in the back seat. Upon learning that Carter had raped the girl and that she was only 15, defendant claimed that he demanded Carter take him back to the club because he did not want to become involved in the incident.

As a result of this statement and a photographic identification of defendant by the victim later that day, Abington police arrested Stanley Saunders on December 8, 1977, at approximately 2:30 a.m.

• • •

Defendant was tried before a jury from April 18 to April 22, 1977. The victim testified to the events of the night she was raped, identifying defendant as the second man who raped her on that evening. Her testimony was in direct conflict with defendant's previous oral and written statements and his testimony at the trial. Instead of returning to the Crestmont Country Club, the victim testified that Carter and defendant drove to an isolated area where defendant forced her to have intercourse with him in the back seat of Carter's car. She also related a conversation between defendant and Carter in which they discussed the advisability of killing her once they were finished with her.

During defendant's case-in-chief, he called Noah Carter as a defense witness. Carter, however, asserted his Fifth Amendment privilege against self-incrimination and refused to testify. Over objection by defense counsel, the trial court ruled that Noah Carter's prior guilty plea did not constitute a waiver of his privilege against self-incrimination and he could not be compelled to testify where there was a danger that his testimony might subject him to prosecution for other charges or crimes.

• • •

Thereafter, the jury returned a verdict of guilty to the charge of indecent assault, corruption of the morals of a minor and criminal conspiracy to commit rape. The sentence of the court was deferred pending post-trial motions which were heard by the court en banc on November 28, 1977.

## ISSUES

• • •

2. Did the trial court correctly rule that co-defendant's guilty plea to rape and conspiracy did not constitute a waiver of his Fifth Amendment privilege against self-incrimination when called to testify as a defense witness?

• • •

## DISCUSSION

### Issue 2

The second ground on which defendant seeks a new trial is the decision of the trial court to allow Noah Carter to assert his Fifth Amendment privilege against self-incrimination when called as a defense witness. Defendant claims that Carter's

guilty plea entered before the undersigned on April 11, 1977, was an effective waiver of his privilege: Com v. Tracey, 137 Pa. Superior Ct. 221, 8 A. 2d 622 (1939), is cited by defendant as authority for this principle. This court has decided, however, that Tracey, which at first reading appears to be on point, is distinguishable and is no longer the law in Pennsylvania, having been overruled sub silentio by the Supreme Court in Com. v. Rogers, 472 Pa. 435, 372 A. 2d 771 (1977).

In 1939, our Superior Court held in Tracey that where a person called as a witness by defendant has already incriminated himself by an admission of guilt in a plea to a charge, he must be regarded as having waived his privilege against self-incrimination "for any testimony he could give, necessarily would be less incriminating in degree than his absolute plea of guilty to the charge: State v. Knudtson, 11 Idaho 524, 83 P. 226 [(1905)]." Com. v. Tracey, supra, at 225.

In Knudtson, a co-defendant, who had not been discharged from the information but had pleaded guilty, was called by the prosecution and testified against defendant. On appeal of his conviction for arson, *defendant* contended that co-defendant under certain provisions of an Idaho statute was not a competent witness against him. Affirming the judgment, the court ruled that the witness was competent to testify because his guilty plea made him subject to give testimony. The language of the court's opinion, however, centers around competency of the witness, not self-incrimination. Moreover, subsequent cases of our Superior Court have held that the right of a witness to assert his privilege against self-incrimination is a right personal to him alone and the person against whom the

witness is called (i.e., the defendant) has no rights in relation to the matter: Com. v. Kinnard, 230 Pa. Superior Ct. 134, 326 A. 2d 541 (1974).[1]

This court believes that the rule in Kinnard is the dispositive legal principle to be applied in cases such as Knudtson where *defendant* attempts to raise the *failure* of a prosecution witness to assert his Fifth Amendment rights as a basis for excluding the witness' testimony. Knudtson, therefore, did not provide a sound precedent for the rule in Tracey where the *witness* asserted his own Fifth Amendment right.

Tracey is also distinguishable by the fact that the witness, having taken the stand and before asserting his Fifth Amendment right, testified he had pleaded guilty to the same crime for which defendant was being tried: Com. v. Tracey, supra, at 223. Tracey therefore falls within the generally accepted rule that if a witness fails to assert his privilege and testifies to incriminating facts, he has waived his Fifth Amendment rights with respect to those facts: Com. v. Butler, 171 Pa. Superior Ct. 350, 90 A. 2d 838 (1952); U.S. v. Alaimo, 191 F. Supp. 625, aff'd 297 F. 2d 604, cert. denied 369 U.S. 817 (1961).

---

1. The trial court in Kinnard specifically relied on Tracey in requiring a witness who had entered a guilty plea to charges of rape and robbery of a book store employe to testify against a co-defendant in that case: Com. v. Kinnard, 87 York 137, 138 (1973). On appeal the Superior Court specifically avoided reaffirming Tracey noting that their holding did not require them "to consider appellant's contention that the nolle prosequi of the charges against the co-defendant would not bar the assertion by the co-defendant of his right against self-incrimination." Com. v. Kinnard, 230 Pa. Superior Ct. 134, 141 (1974).

Finally, the decision of the Pennsylvania Supreme Court in Com. v. Rogers, supra, by implication overrules the holding in Tracey. In Rogers, defendant claimed that the trial court erred in allowing a co-defendant called as a rebuttal witness by the Commonwealth to assert his Fifth Amendment privilege. Out of hearing of the jury, the witness testified that he had been convicted of murder and was serving a term of life imprisonment. Although his conviction had been affirmed by the Pennsylvania Supreme Court and relief denied by the United States Supreme Court, he refused to testify because he was preparing a petition for "habeas" relief. The trial court sustained the witness' assertion of the privilege, and the Commonwealth then read into evidence the witness' testimony from defendant's preliminary hearing. Defendant claimed the admission of the notes of testimony was improper because the trial court erred in permitting the witness to invoke the Fifth Amendment privilege.

The Supreme Court indicated that the question raised by defendant was one of first impression in Pennsylvania. Alluding to the general rule that a conviction barred a witness' subsequent assertion of the privilege against self-incrimination, the court indicated such broad statements required refinement. Reasoning that various direct and collateral remedies available to an individual might result in a new trial, the court said "a conviction does not eliminate the possibility that an individual will later be prosecuted for the crime about which he is asked to testify." 472 Pa. at 455, 372 A. 2d at 780. Citing, inter alia, People v. Smith, 34 Mich. App. 205 (1971), and State v. Tyson, 43 N.J. 411 (1964), in which witnesses were allowed to assert

their Fifth Amendment privilege after a guilty plea but before sentence had been imposed, the court stated as a matter of law it could not be categorically determined that no basis existed from which the witness might apprehend a danger of future prosecution arising from matters about which he had been called to testify.[2] The court held:

"[T]hat the determination whether a witness . . . may invoke the privilege against self-incrimination is properly left to the sound discretion of the trial court. The trial court must consider all the circumstances and decide whether the witness has reasonable cause to apprehend danger or self-incrimination.

"Our holding today is simply an application of the established procedure for judicial administration of witnesses' claims of privilege . . . Given the fundamental values inhering in the privilege against self-incrimination . . . and the liberal treatment accorded such claims of privilege, a trial court's ruling sustaining a witness' claim will not be disturbed absent an abuse of discretion." (Citations omitted.) Id. at 457, 781.

In the case at bar, the trial court properly noted the possibility that Noah Carter might be subject to subsequent prosecution for charges related to or arising out of those at trial. Moreover, prior to sentencing, Carter could still have petitioned for a withdrawal of his guilty plea under Pa.R.C.P. 320, and any incriminating testimony by him would have furnished persuasive grounds for a denial of

2. In Com. v. Tracey, supra, at 225, the court stated: "The fact that judgment [against the witness who had asserted the Fifth Amendment privilege] may not have been entered on the plea of guilt and sentence imposed, is of no moment."

such a petition. If such a petition were approved, his testimony would then be available for prosecution use in a subsequent trial. Thus had Carter been forced to testify, he would have faced a very real possibility of self-incrimination. See State v. Tyson, supra. This court believes that if a witness may assert a Fifth Amendment privilege against self-incrimination after conviction, he is certainly entitled to assert it during the period in which he may withdraw a guilty plea and stand trial. Under these circumstances, the decision of the trial court in allowing Carter to assert this privilege was proper in all respects and was not an abuse of discretion.

Defendant also asserts that the trial court improperly sustained the Commonwealth's objection during closing argument to defense counsel's comments regarding Noah Carter's use of his Fifth Amendment privilege not to testify. Defense counsel claimed that "a reasonable doubt could arise from the testimony that might have been presented from Mr. Carter [but which] was not in fact presented." Although there is a paucity of case law dealing with this factual situation (see Annotation 24 A.L.R. 2d 895), the Pennsylvania Supreme Court has dealt with a case which is directly on point. In Com. v. Greene, 445 Pa. 228, 285 A. 2d 865 (1971), the court held, on facts virtually identical to those at bar, that a jury may not draw any inference from a witness' exercise of his constitutional rights whether the inference be favorable to the prosecution or the defense. The trial court therefore properly sustained the Commonwealth's objection to defense counsel's reference to Noah Carter's failure to testify.

This court, however, notes that Greene also stands for the proposition that a witness should not

be placed on the stand in the presence of the jury for the purpose of having him exercise his privilege against self-incrimination. We note in this case, however, defendant did not raise this issue at trial or on post-trial motions. Defendant may not, therefore, seek reversal on alleged errors not properly raised in the trial court: Com. v. Clair, 458 Pa. 418, 326 A. 2d 272 (1974); Com. v. Carter, 463 Pa. 310, 344 A. 2d 846 (1975). Moreover, it was defendant and not the Commonwealth who decided to place Noah Carter on the witness stand with the knowledge that he would exercise his Fifth Amendment rights. Having made that decision, and in the absence of any further objection from either counsel, the jury was entitled to give the witness' assertion of his constitutional right not to testify whatever natural probative effect it might have had without further comment by either counsel: Com. v. Walker, 178 Pa. Superior Ct. 522, 116 A. 2d 230 (1955).[3]

. . .

3. The rule as initially stated in Walker permits the jury to give evidence which is admitted without objection its natural probative effect *in the absence of fundamental error*. Com. v. Carter and Com. v. Clair, cited previously in the text of this opinion, have, however, eliminated sua sponte consideration of fundamental errors by appellate courts when such error has not been raised by counsel before the trial court. By necessity, the rule in Walker must, therefore, be construed as no longer subject to the fundamental error condition when read in the light of Carter and Clair.