J-S55029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DREW PRITCHETT, | |
| Appellant | No. 436 WDA 2014 |

Appeal from the PCRA Order Entered March 11, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0001813-2008
CP-02-CR-0016115-2007

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:           **FILED NOVEMBER 17, 2015**

Appellant, Drew Pritchett, appeals from the March 11, 2014 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant raises five claims of ineffective assistance of counsel (IAC).  After careful review, we affirm.

This Court summarized the facts of this case in our disposition of Appellant's direct appeal, as follows:

> On September 13, 2007, Carl Richardson and his cousin, Jamal Younger, took a jitney to Mandy's Pizza and Restaurant in the Northside Section of the City of Pittsburgh. After they finished their meal, they attempted to get another jitney to go home, but were unsuccessful.  Richardson then called [Appellant], who he knew had a vehicle, and asked for a ride.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] arrived a short while later with another individual, Dorian Peterson, who was riding in the passenger seat. Richardson and Younger got into the back seat. However, rather than take Richardson and Younger home, [Appellant] decided to drive to the Northside Section of Pittsburgh, which was controlled by a rival gang, the Crips.[1] [Appellant] stated that he wanted to do some "G-Shit," which Younger understood to mean shooting.

While driving down North Charles Street, Peterson spotted the first victim, Maurice Johnson, standing on the side of the road. Peterson pointed a sawed-off 0.22 caliber rifle out of the front passenger window and fired two shots, striking Johnson once in the chest. Johnson was able to leave the scene and get to a hospital, which successfully treated his gunshot wound. [Appellant] then turned onto Morrison Street where Peterson spotted the second victim, Terrence Monroe. Again, Peterson took aim with the sawed-off rifle and shot Monroe twice, killing him. [Appellant] headed back into the Manchester Section of Pittsburgh and turned onto Columbus Street.

Shortly after the two shootings, a police radio report was broadcast to nearby officers informing them of the incident and providing a description of the vehicle involved. Pittsburgh Police Officer Holly Murphy, who was patrolling along Columbus Street, received the report and noticed that [Appellant's] vehicle fit the description. Officer Murphy initiated a traffic stop of [Appellant's] vehicle and ordered the occupants to the ground. [Appellant], Richardson and Young complied; however, Peterson fled on foot to a nearby home. Police took [Appellant], Younger and Richardson into custody to interview. After interviewing Richardson and Younger, police determined that [Appellant] was the driver and that Peterson was the shooter. Police subsequently arrested Peterson.

---

[1] [Appellant] and Peterson were both members of the Manchester OGs (Original Gangsters).

**Commonwealth v. Pritchett**, No. 396 WDA 2010, unpublished memorandum at 1-3 (citations to the record omitted).

Appellant and Peterson were tried together as co-defendants. At the conclusion of the jury trial, Appellant was convicted (regarding the death of Monroe) of first-degree murder, conspiracy to commit murder, and possession of firearm by a person prohibited. He was also convicted (regarding the shooting of Johnson) of conspiracy to commit murder, aggravated assault, and recklessly endangering another person. On March 1, 2010, Appellant was sentenced to life imprisonment for his first-degree murder conviction, plus an aggregate, consecutive term of 20 to 40 years' imprisonment for his other convictions.

Appellant filed a timely direct appeal and this Court ultimately reversed his conviction for first-degree murder, but affirmed his judgment of sentence for his remaining convictions. **See Pritchett**, No. 396 WDA 2010. Appellant's case was remanded for resentencing, and on July 19, 2012, the trial court imposed a new, aggregate sentence of 22½ to 45 years' incarceration.

Appellant filed a counseled PCRA petition on November 7, 2012, as well as an amended petition on November 19, 2012. The Commonwealth filed a motion to dismiss Appellant's petition on November 26, 2012. On June 24, 2013, a PCRA hearing was conducted by the court. Thereafter, on March 11, 2014, the PCRA court issued an order denying Appellant's petition. Appellant filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of

errors complained of on appeal. The PCRA court subsequently issued a Rule 1925(a) opinion.

Herein, Appellant presents the following five issues for our review:

1. Was trial counsel ineffective when he did not renew his request that the trial court give a corrupt source charge at the conclusion of the court charge where the evidence supported that charge?[]

2. Was trial counsel ineffective for not objecting to the introduction of the preliminary hearing transcript of Carl Richardson at [Appellant's] trial, denying [Appellant] his Sixth Amendment right to confrontation?

3. Was [Appellant] denied his Sixth Amendment right to a public trial when trial counsel advised [Appellant's] family that they were not permitted in the courtroom during *voir dire* nor did he object to the public['s] being excluded from the *voir dire* proceeding?

4. Was trial counsel ineffective for not calling any good character witnesses where [Appellant] was a college student, had no criminal record and never explained to [Appellant] the significance of calling good character witnesses[,] *i.e.*[,] that good character witnesses in and of themselves can raise a reasonable doubt. [Appellant] was a teenager with no experience in the criminal justice system and was relying wholly on the advise [*sic*] of his attorney and his attorney was offering bad advice[?]

5. Was trial counsel ineffective for dissuading [Appellant] from getting on the witness stand and testifying in his own behalf, convinced that if [Appellant] testified, he would be found guilty[]?

Appellant's Brief at 3.

We initially note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it

is free of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa.

1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa.

1995)).    Where, as here, a petitioner claims that he received ineffective

assistance of counsel, he

> will be granted relief only when he proves, by a preponderance
> of the evidence, that his conviction or sentence resulted from the
> ineffective assistance of counsel which, in the circumstances of
> the particular case, so undermined the truth-determining
> process that no reliable adjudication of guilt or innocence could
> have taken place.  Counsel is presumed effective, and to rebut
> that presumption, the PCRA petitioner must demonstrate that
> counsel's performance was deficient and that such deficiency
> prejudiced him.    In Pennsylvania, we have refined the
> ***Strickland*** [***v. Washington***, 104 S.Ct. 2052 (1984),]
> performance and prejudice test into a three-part inquiry.  ***See***
> [***Commonwealth v.***] ***Pierce***, [527 A.2d 973 (Pa. 1987)]. Thus,
> to prove counsel ineffective, the petitioner must show that: (1)
> his underlying claim is of arguable merit; (2) counsel had no
> reasonable basis for his action or inaction; and (3) the petitioner
> suffered actual prejudice as a result.  If a petitioner fails to prove
> any of these prongs, his claim fails.    Generally, counsel's
> assistance is deemed constitutionally effective if he chose a
> particular course of conduct that had some reasonable basis
> designed to effectuate his client's interests.  Where matters of
> strategy and tactics are concerned, a finding that a chosen
> strategy lacked a reasonable basis is not warranted unless it can
> be concluded that an alternative not chosen offered a potential
> for success substantially greater than the course actually
> pursued.  To demonstrate prejudice, the petitioner must show
> that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceedings would have
> been different.  A reasonable probability is a probability that is
> sufficient to undermine confidence in the outcome of the
> proceeding.

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014) (some citations

omitted; quotation marks and brackets omitted).

In Appellant's first claim of ineffectiveness, he maintains that his trial counsel, Brent McCune, Esq., acted ineffectively by not objecting when the court refused to provide a 'corrupt source' jury charge, pertaining to the testimony of Younger and Richardson. While Attorney McCune initially requested such an instruction, he did not object when the court declined to provide that jury charge. Consequently, on direct appeal, this Court found that Appellant waived any objection to the omission of the corrupt source jury instruction. Appellant maintains that had Attorney McCune properly objected and preserved this issue for appeal, "there is a reasonable probably [Appellant] would have been awarded a new trial." Appellant's Brief at 8.

We disagree. As our Supreme Court has explained:

A corrupt source instruction advises the jury that if it finds that a certain witness who testified against the defendant was an accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a "corrupt and polluted source" whose testimony should be considered with caution. **Commonwealth v.**[] **Williams**, 557 Pa. 207, 732 A.2d 1167, 1181 (1999); **accord Commonwealth v. Hackett**, 534 Pa. 210, 627 A.2d 719, 724 (1993). The instruction is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice. [] **Williams**, 732 A.2d at 1181; **Hackett**, 627 A.2d at 724.

Section 306(c) of the Crimes Code defines accomplice liability as follows:

**(c) Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

> (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.
>
> 18 Pa.C.S. § 306(c). Accordingly, accomplice liability requires evidence that the person: (1) intended to aid or promote the substantive offense; and (2) actively participated in that offense by soliciting, aiding, or agreeing to aid the principal. **Commonwealth v. Rega**, 593 Pa. 659, 933 A.2d 997, 1014 (2007), *cert. denied,* 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008). One merely present at the crime scene is not an accomplice, **id.,** nor is one who merely helps an offender try to escape arrest or punishment an accomplice, **Commonwealth v. Spence**, 534 Pa. 233, 627 A.2d 1176, 1183 (1993); **Hackett**, 627 A.2d at 725.

**Commonwealth v. Collins**, 957 A.2d 237, 262-63 (Pa. 2008).

Here, Appellant contends that a corrupt source charge was warranted because Younger and Richardson were accomplices in the shootings. Appellant's co-defendant, Peterson, asserted this same argument on direct appeal, and this Court rejected it. **See Commonwealth v. Peterson**, No. 368 WDA 2010, unpublished memorandum at 5 (Pa. Super. filed March 16, 2010). In doing so, we relied on the rationale expressed in the trial court's Rule 1925(a) opinion. **See id.** The trial court opinion in Peterson's case was identical to the trial court opinion issued in Appellant's case.

In that decision, the trial court concluded that Peterson's and Appellant's claim that Younger and Richardson were accomplices was a "bald assertion" that was not supported by the evidence presented at trial. **See** Trial Court Opinion, 9/6/11, at 20-22. The trial court instead found that "[t]he only evidence in the record that touche[d] upon Richardson['s] and

Younger's involvements in the shootings was the fact that they were present at the scene of these shootings." *Id.* at 21. Therefore, the court concluded that "Peterson and Pritchett were not entitled to the corrupt and polluted source instruction since the record fail[ed] to demonstrate how either Richardson['s] or Younger's presence at these shootings could ever implicate them as an accomplice or co-conspirator." *Id.* at 22. In Peterson's appeal, this Court agreed with the trial court's conclusion, and affirmed the court's decision not to provide the requested 'corrupt source' jury instruction. *Peterson*, No. 368 WDA 2010, unpublished memorandum at 5.

This Court's decision in Peterson's direct appeal convinces us that Appellant's underlying claim that a corrupt source jury charge was warranted lacks arguable merit. This is especially true where Appellant offers no discussion of how or why this Court would have concluded that Younger and Richardson were *Appellant's* accomplices, yet not Peterson's. Consequently, Appellant's first claim that Attorney McCune acted ineffectively is meritless.

In Appellant's second IAC claim, he maintains that Attorney McCune erred by not objecting to the introduction of Richardson's preliminary hearing testimony. Appellant argues that that evidence was inadmissible at trial because Appellant was deprived of his right to fully cross-examine Richardson during the preliminary hearing. In *Commonwealth v. Bazemore*, 614 A.2d 684 (Pa. 1992), our Supreme Court explained:

> Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. *Commonwealth v. McGrogan*, 523 Pa. 614, 568

A.2d 924 (1990) (collecting cases). However, it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding. ***Commonwealth v. Rodgers***, 472 Pa. 435, 372 A.2d 771 (1977).

*Id.* at 685.

We need not address whether Appellant had a full and fair opportunity to cross-examine Richardson at the preliminary hearing, or whether Attorney McCune had a reasonable basis for not objecting to the admission of Richardson's preliminary hearing testimony, as Appellant has failed to prove the prejudice prong of the ineffectiveness test. We reiterate that to demonstrate counsel's ineffectiveness, Appellant must prove that he suffered 'actual prejudice' or, in other words, that there is a reasonable probability that the result of the proceeding would have been different but for counsel's purported error. ***See Spotz***, 84 A.3d at 312. "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Id.*** In this vein, Appellant states, "[t]he outcome would clearly have been different without Richardson's testimony[,]" because "[i]t was Richardson who put [Appellant] at the scene of the crime [and] driving the car…." Appellant's Brief at 13-14. Appellant also declares that had Attorney McCune objected [to the admission of Richardson's preliminary hearing testimony], "the transcript would have been inadmissible and that would have gone a long way in the defense of this case." ***Id.*** at 19.

These assertions are insufficient to demonstrate actual prejudice. Richardson was not the only witness who testified that Appellant was present during the shootings; Jamal Younger also testified that Appellant was driving the vehicle when the shootings occurred. N.T. Trial, 10/27/09-10/29/09, at 289. Additionally, the jury heard evidence that, on the night of the shootings, Younger told police that Appellant said he "was on G shit[,]" *id.* at 295, which Younger understood as meaning that Appellant was "doing some gangster shit which is shooting at Crips…." *Id.* at 301. Younger also told police that Appellant drove toward an area of the city called "the cave," *id.* at 295, and stated that "[t]here is no other reason to go to the cave other than to shoot someone." *Id.* at 296. Younger explained that once in 'the cave,' Appellant "drove past a group of people on Morrison" and then "made a U-turn" to drive past the group again while "[t]he front passenger pulled out and fired two shots into the group…." *Id.* at 295.

Based on Younger's testimony alone, the jury could have concluded that Appellant was not only present during the shootings, but that he participated in those offenses by driving the vehicle from which Peterson fired at the victims. Appellant fails to explain how the absence of Richardson's preliminary hearing testimony would have cast doubt on Younger's trial testimony. Therefore, Appellant's scant argument regarding the prejudice prong of the IAC test has failed to convince us that the jury's verdict would have been different had Richardson's preliminary hearing

testimony been objected to by Attorney McCune, and not admitted into evidence.

In Appellant's next IAC claim, he maintains that Attorney McCune deprived him of his constitutional right to a public trial by incorrectly informing Appellant's parents that they were not permitted in the courtroom during jury *voir dire*. In addressing this claim, we begin by acknowledging that:

> The Sixth Amendment right to a public trial in a criminal case is binding on the states through the due process clause of the Fourteenth Amendment.
>
> The Pennsylvania Constitution likewise guarantees an accused's right to a public trial. The right to a public trial is applicable to *voir dire* proceedings.
>
> * * *
>
> In determining whether the *voir dire* procedure ... violated [a defendant's] right to a public trial, we keep in mind that such right serves two general purposes: (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed. The public's right to attend a trial is not absolute, and exists as a guarantee of fairness in judicial conduct during criminal court proceedings. Where trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review.
>
> The question in a particular case is whether that control [over the courtroom] is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

*Commonwealth v. Phillips*, 946 A.2d 103, 109 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Here, it is apparent from the record that the *trial court* did not exclude the public from the jury *voir dire* proceeding. Moreover, Attorney McCune did not have the authority, nor did he attempt, to exclude *the public* from that portion of Appellant's trial. While Attorney McCune conceded at the PCRA hearing that he informed Appellant's parents that they could not be in the courtroom during the jury selection proceeding, that incorrect information did not constitute the exclusion of the public from Appellant's trial. **See** N.T. PCRA Hearing, 7/14/13, at 20. Therefore, Appellant's contention that his right to a public trial was violated due to Attorney McCune's conduct lacks arguable merit.[1]

_____

[1] In any event, we note that even if Appellant's underlying claim had arguable merit, we would conclude that he has not demonstrated that he was prejudiced by Attorney McCune's conduct. Appellant argues in his brief to this Court that "no showing of prejudice is required where a violation of an accused's right to a public trial is asserted[,]" as such a violation constitutes a "structural error" that carries a presumption of prejudice. Appellant's Brief at 25. Appellant's 'presumption of prejudice' argument is correct in the context of a *direct appeal*. **See Sullivan v. Louisiana**, 508 U.S. 275, 281-282 (1993) (explaining that harmless-error review does not pertain to structural errors); **Commonwealth v. Rega**, 20 A.3d 777, 786 (Pa. 2013) (stating "various courts have found a violation of the right to a public trial to be in the nature of a structural error"). **See also Waller v. Georgia**, 467 U.S. 39, (1984) (concluding, in context of a direct appeal, that "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee"). However, where, as here, a public-trial violation is asserted in the context of an *ineffective assistance of counsel claim*, the petitioner must prove that prejudice resulted from counsel's conduct. **See Rega**, 20 A.3d at 787 (holding that because

*(Footnote Continued Next Page)*

In Appellant's fourth issue, he avers that Attorney McCune "was ineffective for not calling any good character witnesses where [Appellant] had no prior adult criminal record and counsel's reasoning was flawed." Appellant's Brief at 28 (unnecessary capitalization omitted). To prove that counsel was ineffective for failing to call character witnesses, Appellant must demonstrate, *inter alia*, that such witnesses were available and willing to testify at Appellant's trial, and that Attorney McCune knew or should have known of the witnesses' existence. **Commonwealth v. Treiber**, -- A.3d --, 2015 WL 4886374 (Pa. 2015) (citing **Commonwealth v. Chmiel**, 889 A.2d 501, 546 (Pa. 2005)).

The PCRA court concluded that Appellant failed to meet this burden, and the record supports that determination. Namely, at the PCRA hearing, Appellant presented the testimony of three potential character witnesses:

*(Footnote Continued)* ─────────────

the appellant "did not object to the after-hours courtroom arrangements [which ostensibly violated his right to a public trial], the only cognizable aspect of his claim is that of deficient stewardship, *as to which he must establish prejudice*") (citation omitted; emphasis added); **Commonwealth v. Johnson**, 500 A.2d 173, 177 (Pa. Super. 1985) (applying the 'actual prejudice' standard when assessing Johnson's claim that his right to a public trial was violated, and that counsel acted ineffectively by failing to object to the court's conducting nonpublic jury selection). Here, Appellant offers no discussion of how he was prejudiced by Attorney McCune's improperly informing his parents that they could not attend the jury selection proceeding. **See** Appellant's Brief at 20-27 (claiming only that prejudice is presumed where a violation of the right to a public trial occurs). Accordingly, even if Appellant's underlying claim had arguable merit, we would conclude that he has failed to demonstrate that he was prejudiced by Attorney McCune's conduct.

Patricia Thompson, Dwayne James, and Gregory Johnston. These witnesses each testified that they were willing and available to testify at Appellant's trial, but were not contacted by Attorney McCune. *See* N.T. PCRA Hearing, 6/24/13, at 4-5, 15, 25-26. Appellant testified that he gave Attorney McCune "a list of people" willing to testify as character witnesses; however, Appellant did not name any of the individuals he included on that list. *Id.* at 43. When Attorney McCune later took the stand, he testified that prior to Appellant's trial, he compiled a "character witness file," which contained a document that had "at least ten if not more names" of potential character witnesses that Appellant had provided to counsel. N.T. PCRA Hearing, 7/14/13, at 27-28. While Attorney McCune was not asked to state the names of each of those witnesses, he testified that he "tried to contact them all" and, in doing so, he discovered that only five of the witnesses were willing to testify and could have offered proper character testimony. *Id.* at 29. Attorney McCune named those witnesses as Atrio Walker, Markaiea McPherson, Denise Rideout, Ben Dixon, and Ira Lewis. *Id.*

The PCRA court states that it "does not view as credible the testimony of [Appellant] or the witnesses presented as character witnesses at the PCRA [h]earing that they were available and made known to trial counsel at the time of trial." PCRA Court Opinion (PCO), 3/23/15, at 9. Accordingly, the court concludes that Appellant failed to demonstrate that Attorney McCune acted ineffectively in this regard. The record supports the court's credibility determinations and legal conclusions. Appellant did not testify that he told

- 14 -

Attorney McCune about Thompson, James, and/or Johnston, and Attorney McCune did not specifically name any of those witnesses as individuals who were proper character witnesses that were available and willing to testify. Accordingly, Appellant has failed to demonstrate that counsel was ineffective for not presenting these witnesses at trial.

In Appellant's fifth and final claim of ineffectiveness, he argues that Attorney McCune interfered with his right to testify. Appellant contends that Attorney McCune did not "explain the defense to him," or "the positives and negatives" of taking the stand. Appellant's Brief at 39. Appellant also asserts that Attorney McCune "told [Appellant] that he believed that it was unnecessary for [Appellant] to testify." *Id.* Appellant further avers that his decision not to testify was not knowing and intelligent "[b]ecause of his age, inexperience, immaturity and the influence placed upon him by his attorney…." *Id.*

In rejecting this claim of ineffectiveness, the PCRA court noted that Attorney McCune testified at the PCRA hearing,

> that he and [Appellant] spoke extensively about the question as to whether or not [Appellant] should testify. [Attorney] McCune noted [Appellant's] concerns about testifying based on concerns for his family's safety, specifically his sister. [Counsel] testified that he really wanted [Appellant] to testify, despite [Appellant's] fears. [Attorney] McCune testified that [Appellant's] decision was made at the Allegheny County Jail during a "solemn moment[."]

PCO at 9-10.

- 15 -

The PCRA court also emphasized that through a colloquy conducted during trial, Appellant was "advised of his right to testify at length." *Id.* at 9. Moreover, the trial transcript reflects that after that colloquy, conducted on Friday, October 30, 2009, Appellant indicated that he was "wavering back and forth" about taking the stand, but "believe[d] [he was] going to testify…." N.T. Trial, 10/30/09-11/4/09, at 69. Attorney McCune then explained to the court that he "spent two hours" with Appellant the night before the colloquy and "recommended that [Appellant] testify." *Id.* at 70. However, Appellant was "concern[ed] for his safety, his sister's safety, [and the safety of] his family members…." *Id.* The trial court then recessed to provide Appellant time to consult with his family. *Id.* at 70-71. Ultimately, Appellant was not again asked about his decision to testify until trial commenced on Monday, November 1, 2009. *See* N.T. Trial, 10/30/09-11/4/09, at 184, 187. At that time, Appellant informed the court that he had decided not to take the stand, and stated to the court that his decision was "free and voluntary." *Id.* at 187. Appellant also stated that he had not been "forced, threatened, or coerced" into making that decision. *Id.*

Based on this record, the PCRA court concluded that Appellant "was fully advised of his rights concerning his ability to testify, thoroughly discussed this matter with his lawyer, and decided not to testify, despite counsel's belief that he wanted [Appellant] to testify." PCO at 10. Accordingly, the court concluded that Appellant's claim that Attorney McCune ineffectively interfered with Appellant's right to testify was "without merit."

***Id.*** After reviewing the portions of the trial record cited by the court, as well as the PCRA hearing transcripts, we ascertain no legal error in the PCRA court's decision.

In sum, we conclude that none of Appellant's IAC claims warrants relief. Accordingly, we affirm the PCRA court's order denying his petition.

Order affirmed.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015