496 A.2d 1177

**COMMONWEALTH of Pennsylvania**

v.

**Damon JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1985.

Filed Aug. 2, 1985.

Daniel P. Alva, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BECK and CERCONE, JJ.

WICKERSHAM, Judge:

A single, narrow issue is presented in this appeal which follows Damon Jones' conviction of murder in the first degree.[1] The case was heard in a bench trial before the Honorable Joseph T. Murphy commencing January 27, 1983.

Appellant Jones, in his brief, sets forth the facts as follows:

---

**1.** Jones was also convicted of possessing instruments of crime, generally.

Appellant, Damon Jones, was arrested on January 3, 1982, and charged with murder in the first degree and possession of the instrument of a crime. At a preliminary hearing on June 3, 1982, appellant was held for court on all charges....

On January 27, 1983, the appellant was brought to trial before the Honorable Joseph T. Murphy sitting without a jury. The court delivered its verdict on January 31, 1983, and found the appellant guilty of ... murder in the first degree and possession of an instrument of crime.

The appellant filed timely post-trial motions on February 1, 1983, challenging, *inter alia*, the trial court's ruling that John Williams was unavailable to the Commonwealth as a witness and that that portion of the notes from appellant's preliminary hearing containing his testimony were, therefore, admissible as substantive evidence against appellant at his trial. On April 19, 1984, the court denied appellant's post-trial motions. The appellant was sentenced as follows: Bill No. 1197, charging murder in the first degree, life imprisonment; Bill No. 1198, possession of an instrument of a crime, eleven and one-half to twenty-three months consecutive to Bill No. 1197.

The appellant filed a timely notice of appeal on April 19, 1984....

The evidence relevant to the appellant's current contentions consists of the following: Helen Vaughan testified that on December 23, 1981, she was asleep in the apartment of her boyfriend, the deceased, Darrell "Chubby" Williams. She was awakened by gunshots at which time she ran downstairs and saw a male dressed in a blue hat, beige jacket, and jeans, run from the kitchen and out of the apartment. Ms. Vaughan further testified that later on that same day she observed the appellant on the steps to the apartment.

She observed that appellant was wearing a blue hat and beige jacket, but different pants. Nonetheless, Helen Vaughan testified that based upon her observations of appellant's clothing, he was the male who earlier that day

she had seen run from the kitchen and out of the apartment.

\*     \*     \*     \*     \*     \*

Prior to the luncheon recess, Roger King, the assigned assistant district attorney, informed the court that the Commonwealth's chief witness, John Williams, ... might refuse to testify and that counsel for the witness might, therefore, be needed....

Upon reconvening, the Commonwealth called John Williams to the witness stand. Mr. King immediately began to attempt to impeach Mr. Williams through the use of a statement allegedly given by him to Detectives Dougherty and Gibson and the notes of testimony from the preliminary hearing of June 3, 1982.

\*     \*     \*     \*     \*     \*

Subsequent to the Commonwealth's examination of its witness, but prior to Mr. Williams' actual recantation at trial, it sought and was granted the admission of the notes of testimony of the June 3rd hearing as substantive evidence against the appellant. The relevant portions of the notes were read into the record by Ms. Anita Brooks, a clerk in the office of the Clerk of Quarter Sesssions [sic].

Brief for Appellant at 1–4 (footnotes omitted).

Appellant frames the issue as follows:

Did not the trial court err by ruling that at the time of appellant's trial, the main Commonwealth witness, John Williams, was unavailable and, therefore, that testimony given by him at appellant's preliminary hearing was admissible as substantive evidence?

Brief for Appellant at 1.

At trial, the Commonwealth was permitted to introduce, through the testimony of Anita Brooks, the preliminary hearing notes wherein John Williams testified. The preliminary hearing was held June 3, 1982 before the Honorable

Mitchell S. Lipschutz and appellant was represented by counsel. William's testimony, under oath, included the following:

Q. How long have you known Damon Jones?

A. For about a year, a year and a half.

Q. And, on that date that Chubby was shot, did you have occasion to see Damon Jones?

A. Yes.

Q. And did you have any conversation with Damon Jones?

A. Yes.

Q. Can you tell His Honor what the conversation you had with Damon Jones was?

A. I was walking through the building—

    \*    \*    \*    \*    \*    \*

Q. All right. You were walking through the building, and what happened?

A. Somebody came down and tapped me on my shoulder and told me Damon wanted me.

Q. And did you go see Damon wherever he was?

A. Yes.

Q. Where was he?

A. On the 11th floor of the building.

Q. Was he in an apartment?

A. Yeah.

Q. And did you go to that apartment?

A. Yeah.

Q. What happened when you got there?

A. He told me [he] had shot Chubby.

Q. Who told you that?

A. Damon

Q. And did he tell you why he had shot Chubby?

A. No.

Q. Did you ask him any questions about the shooting of Chubby?

A. No.

Q. Now, did he give you any reason at all for why he had done it?

A. No.

Q. And the person you know as Damon Jones, do you see him in this Courtroom today?

A. Yes.

Q. And would you point him out?

A. (Witness indicates.)

MR. BOLAND: May the record reflect the witness has identified the Defendant.

THE COURT: The record may so reflect.

Q. When he told you that he had shot Chubby, did you say anything to him?

A. I said, 'no, you didn't,' like that.

Q. And did he say anything when you said that?

A. Yeah. He showed me some bloody clothes.

Q. What kind of clothes were they?

A. A tan jacket and some tan pants.

THE COURT: A tan jacket and what?

THE WITNESS: and some tan pants.

MR. BOLAND: Cross-examine.

Record at 17–19.

At the bench trial before Judge Murphy, Williams had a partial or near total memory loss. He said, *inter alia,*

"Q. Directing your attention further, Mr. Williams, to June the 3rd of 1982, the preliminary hearing at City Hall Courtroom 675 before the Honorable Mitchell S. Lipschutz, do you remember appearing at that preliminary hearing?

"A. Yea.

        *    *    *    *    *    *

"Q. What did you testify to at that preliminary hearing?

"A.   I don't remember.

"Q.   You don't remember?   Do you remember being asked a series of questions as to what you knew about the death of Darrell Chubby Williams?

"A.   Yea.

"Q.   Are you saying you have no present recollection of what you testified to then?

"A.   Yea.

        \*       \*       \*       \*       \*       \*

"Q.   Mr. Williams, do you know why you are in Court here today?

"A.   Yea.

"Q.   Why are you here?

"A.   To testify.

"Q.   And what are you to testify about?

"A.   A murder.

"Q.   Whose murder?

"A.   I don't know.

"Q.   You don't know?

"A.   No.

        \*       \*       \*       \*       \*       \*

"Q.   On June the 3rd of 1982 before the Honorable Mitchell S. Lipschutz in courtroom 675 of City Hall, didn't you testify that Damon Jones told you that he killed Chubby Williams, and he showed bloody clothing?

"A.   I don't remember.

        \*       \*       \*       \*       \*       \*

"Q.   Mr. Williams, do I understand your answer to mean that you remember appearing and testifying at a preliminary hearing;  is that correct?

"A.   Yea.

"Q. And when you appeared and testified at the preliminary hearing, is it your statement or your testimony that you don't remember what you testified to?

"A. Yea.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Do you remember giving the answer?

A. He told me he had shot Chubby.

"A. No.

"Q. Do you remember this question?

Q. Who told you that?

"A. No.

"Q. Do you remember giving this answer?

A. Damon.

"A. No.

"Q. Do you remember this question?

Q. When he told you that he had shot Chubby, did you say anything to him?

"A. No.

"Q. You don't remember that question? Do you remember giving this answer?

A. I said, 'No, you didn't,' like that.

Do you remember saying that?

"A. No.

"Q. Do you remember this question?

Q. And did he say anything when you said that? Do you remember that question?

"A. No.

"Q. Do you remember this answer?

A. Yea, he showed me some bloody clothes.

"A. No.

"Q. You don't remember giving that answer?

"A. No.

"Q. Remember this question?

Q. What kind of clothes were they?

Do you remember that question?

"A. No.

"Q. Do you remember this answer?

A. A tan jacket and some tan pants.

"A. No.

"Q. Are you saying you didn't say that at the preliminary hearing?

"A. I don't remember.

"Q. Has anything happened between June the 3rd and today that caused you to forget what happened on June 3rd?

"A. No.

\*   \*   \*   \*   \*   \*

"Q. Who did you tell the Detectives killed Chubby Williams?

"A. I don't remember.

"Q. You don't remember?

"A. No.

"Q. Did you tell them that Damon Jones told you he shot Chubby?

"A. No.

"Q. You never told the detectives that?

"A. I don't remember telling them that.

"Q. You don't remember telling them that?

"A. Yea.

\*   \*   \*   \*   \*   \*

"Q. And you were under oath back at the preliminary hearing on June 3rd when you told the Judge there that Damon Jones told you he shot Chubby Williams, were you not?

"A. Yea.

"Q. You are under oath here today, are you not?

"A. Yea.

"Q. Did Damon Jones tell you he shot Chubby Williams?

"A. No.

Record at 75–76, 77–78, 81–82, 90, 91–92, 94–96, 102–103 and 106.

This is not a situation where the witness refused to testify on the basis of the privilege against self-incrimination, U.S. Const. Amend. V; Pa.Const. art. I, § 9. *Compare Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977). In *Rodgers,* the preliminary hearing testimony of one Ferguson was read into evidence over objection. Ferguson had asserted his fifth amendment privilege. Justice Roberts, speaking for a unanimous court said:

> Appellant asserts that admission of the notes of testimony was improper because the trial court erred in permitting Ferguson to invoke the privilege against self-incrimination. Appellant claims that admission of the notes of testimony came within no recognized exception to the hearsay rule and violated his right to confront witnesses against him. U.S. Const.Amend. VI; Pa.Const. art. I, § 9. We do not agree.

> It is well established that the prior testimony from a preliminary hearing of an unavailable witness is admissible at trial, provided that the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding.... A witness who invokes the privilege against self-incrimination is "unavailable" for purposes of the hearsay exception permitting the introduction of the notes of testimony from a prior judicial proceeding.

*Id.,* 472 Pa. at 452–53, 372 A.2d at 779 (footnote and citations omitted).

We are compelled to follow *Rodgers* logic in that the "true test of unavailability is the unavailability of the witness' testimony, not his or her person." *Id.*, 472 Pa. at 453, 372 A.2d at 779. It thus follows that a "partial lack of memory renders [a witness] unavailable for purposes of the common law exception ... [t]his approach ha[ving] the value of fairness to both parties in that necessary testimony is admitted, with the opponent being able to cross-examine the witness both as to his asserted lack of memory as well as to [any] present testimony." *Commonwealth v. Graves*, 484 Pa. 29, 38, 398 A.2d 644, 649 (1979).[2] The *Graves* Court offers additional guidance when it states, "[w]hatever reason is offered for the witness' failure to recall the events to which he has previously testified can be challenged since the witness is available and subject to inquiry upon the subject." *Id.*, 484 Pa. at 38, n. 5, 398 A.2d at 649, n. 5 (1979).

This Court has since addressed the issue of memory loss in the wake of the *Graves* decision. In *Commonwealth v. Von Smith*, 303 Pa.Super. 534, 450 A.2d 55 (1982) (after remand), the court, faced with the *total* memory loss of two Commonwealth witnesses held: "[c]learly, the *Graves* decision recognizes complete lack of memory as a ground for determining a witness' unavailability as well as partial memory loss. Obviously, total lack of recall presents a more compelling instance to find unavailability than does partial memory loss." *Id.*, 303 Pa.Superior Ct. at 540, 450 A.2d at 58.

2. *See Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977) and *compare Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970) (where the witness had died prior to trial) in which the court said: While it is true that the focus of a preliminary hearing is narrower than that of a trial, we are not persuaded that the difference requires exclusion of the testimony taken at such a hearing. *Our basic concern is for the reliability of the testimony which was elicited in the preliminary hearing, and we do not feel that its reliability is affected by the scope or focus of the proceeding.* It would certainly be more desirable to have the witness present at trial, but it would be vastly less desirable to exclude such evidence altogether. *Id.*, 438 Pa. at 525, 265 A.2d at 803 (emphasis added). Id., 471 Pa. at 381, 370 A.2d at 354 (emphasis in original).

In his opinion filed August 14, 1984, Judge Murphy observed:

> In the instant case, defendant had counsel and had a full opportunity to cross-examine John Williams at his preliminary hearing (N.T. 1/31/83, pp. 19–35). Therefore, provided only that John Williams was properly declared "unavailable" at trial, his testimony from the preliminary hearing was admissible. *Commonwealth v. Rodgers, supra.* Thus, the sole remaining question is whether John Williams was properly declared "unavailable" by the trial judge.
>
> A brief review of the testimony given by John Williams at trial indicates that he suffered from at least partial, it not total, memory loss. When asked if he recalled his testimony from the preliminary hearing, he repeatedly said that he did not (N.T. 1/28/83, pp. 79, 90). In fact, at various points the witness indicated that he did not remember some very basic facts about the preliminary hearing (N.T. 1/28/83, pp. 90, 92–96). Finally, even after his memory was partially refreshed, the witness still lacked sufficient recollection to enable him to testify (N.T. 1/28/83, p. 105). Thus, regardless of whether this partial loss of memory indicated a conscious desire to withhold information, it rendered this witness "unavailable" to testify at trial, and the Notes of Testimony from the preliminary hearing were properly admitted.

Lower ct. op. at 6–7.

■ We conclude, under the facts of this case, that where a witness has previously testified at a preliminary hearing, under oath, and has been cross-examined by defendant's counsel, such testimony is admissible where the witness claims no memory of such at trial. We find that John Williams was an unavailable witness, under such circumstances, within the common law rule. We believe *Von Smith* is controlling here and accordingly hold that the lower court properly admitted the prior testimony.

Judgment of sentence affirmed.