J-S28026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v. :
:
:
DAMON JONES :
:
Appellant : No. 2604 EDA 2023

Appeal from the PCRA Order Entered September 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0611961-1982

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 13, 2024**

Damon Jones (Appellant) appeals from the order dismissing as untimely

his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§

9541-9546. We affirm.

The trial court summarized the facts adduced at trial:

At about 6:00 a.m. on December 23, 1981, [Appellant] entered
the residence of … Helen Vaughan, while Ms. Vaughan slept. N.T.,
1/28/83, at 5. … Ms. Vaughan heard … gunshots and started [to
walk] downstairs. *Id.* From a vantage point on the stairs, Ms.
Vaughan saw a man, fitting [Appellant's] description, with a gun
running from the living room into the kitchen. *Id.* This man was
wearing a three-quarter-length beige coat with a rip in the back,
a blue-knit cap and pants. *Id.* at 6. Ms. Vaughan further
observed this man run through the kitchen, take something from
the freezer, and leave the premises. *Id.* at 5-6. … At this time,
[Ms. Vaughan] discovered the body of her boyfriend, Darryl
Williams [(Decedent)], on the floor in the living room. *Id.* at 6.
…

Later that day, Ms. Vaughan saw th[e] same man in front of
her house wearing the same clothes. *Id.* at 9. At this time[,] she

was certain that [Appellant] was the man who had killed [Decedent] earlier that day. *Id.* at 9-11.

Later [the same] day, John Williams (no relation to [D]ecedent) was walking through the [neighborhood] when he was approached by [Appellant's] cousin. N.T., 1/31/83, at 17-23. Mr. Williams was told that [Appellant] wanted to see him. *Id.* at 17. Mr. Williams went to the apartment where [Appellant] was staying, at which time [Appellant] showed Mr. Williams some blood-stained clothing and told him that [Appellant] had shot [D]ecedent. *Id.* at 18-19. … [Appellant] confessed the murder [so he could ask] Mr. Williams [to] find out whether or not Helen Vaughan could identify [Appellant as the shooter]. *Id.* at 18-19.

Trial Court Opinion, 8/14/84, at 2-5 (citations modified). Vaughan and Williams gave statements to police, and the Commonwealth subsequently charged Appellant with Decedent's murder.

A prior panel of this Court summarized the procedural history:

On January 31, 1983, … following a non-jury trial, [Appellant] was convicted of murder in the first degree and possession of an instrument of crime [(PIC)].[1] [Appellant's] post-verdict motions were denied[. Appellant] was sentenced to consecutive terms of life imprisonment for first degree murder and [11½ to 23] months for [PIC]. [Appellant] appealed and this [C]ourt affirmed his judgment of sentence. *Commonwealth v. Jones*, 496 A.2d 1177 (Pa. Super. 1985). [On September 25, 1986, the Pennsylvania Supreme Court denied allowance of appeal. *Id.*, 1018 E.D. Allocatur Docket 1985 (Pa. 1986).]

Thereafter, [Appellant] filed a petition for relief under the Post-Conviction Hearing Act ("PCHA"). 42 Pa.C.S.[A.] § 9541 *et seq.* (repealed).[2] Following a hearing, [Appellant's] petition for relief was denied. On appeal, this [C]ourt affirmed the order of

---

[1] 18 Pa.C.S.A. §§ 2502(a), 907(a).

[2] The PCHA was repealed and substantially modified by the PCRA, 42 Pa.C.S.A. §§ 9541-9546 (Purdon Supp. 1989), effective April 13, 1988.

the PCHA court. ***Commonwealth v. Jones***, [] 877 Philadelphia 1989 ([Pa. Super.] September 9, 1989).

[Appellant] subsequently filed a petition for relief under the PCRA. [On August 29, 1990, t]he PCRA court denied [Appellant's] petition for relief without a hearing.

***Commonwealth v. Jones***, 2669 Philadelphia 1990 (Pa. Super. 1991) (unpublished memorandum at 1-2) (footnotes added). This Court affirmed the PCRA court's order. ***Id.*** (unpublished memorandum at 5).

On November 2, 2015, Appellant filed the instant, *pro se* PCRA petition, his third post-conviction petition. He alleged, *inter alia*, his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." PCRA Petition, 11/2/15, at 2 (citing 42 Pa.C.S.A. § 9543(a)(2)(vi)). Appellant attached to his petition affidavits signed by Tyrone Price (Price), David McKnight (McKnight), Darrell Jones (Jones), and John Williams (Williams).[3] ***Id.***, Exhibits 1-4. On June 16, 2016, Appellant filed a supplemental PCRA petition, which included an affidavit signed by Hondrea Wilson (Wilson). Supplemental Petition, 6/6/16, Exhibit B. Appellant alleged he timely raised his claims, because the facts contained in the five affidavits were "previously unknown" to him and "could not have been

_____

[3] The petition also alleged the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 93 (1963), by failing to disclose a letter Williams allegedly sent to the prosecutor before Appellant's trial. PCRA Petition, 11/2/15, at 4.

ascertained by the exercise of due diligence." ***Id.*** at 6-7 (citing 42 Pa.C.S.A. § 9545(b)(1)(ii)); ***see also*** PCRA Petition, 11/2/15, at 3.

The respective affidavits alleged as follows: Price's affidavit stated that Price witnessed an individual he identifies only as "Chip" threaten Decedent with a gun about a half hour before the murder. ***Id.***, Exhibit 1. According to Price, he and Decedent left the scene of this altercation, and shortly thereafter Decedent "left [Price] and went over to his girl[friend] Helen's apartment [at 1002 Reno Place]." ***Id.*** About a half hour later, Price heard three or four gunshots, then "witness[ed] Chip with a gun in his hand exiting the hallway of 1002 Reno Place." Price stated he saw Chip later that day, and Chip "threatened me" and "told me I better keep my mouth closed about what I knew concerning" the previous night. ***Id.*** Price gave a statement to police on December 23, 1981. ***Id.*** However, Price alleged in his affidavit, "I didn't tell [the police] the full truth about what I knew of [Decedent's] death … because I was scared for my life after Chip threatened me that day." ***Id.*** Appellant's supplemental petition alleged the individual identified as "Chip" is Sylvester Williams.[4] Supplemental Petition, 6/16/16, at 4-5.

Wilson's affidavit stated that on April 17, 2016, Wilson

was able to speak with Rena Bentley concerning what [] Price said in his statement about [Decedent] getting into a fight with Sylvester Williams prior to [Decedent's] death on that same day. Rena confirmed to me that [Decedent] did get into a fight with

_____

[4] The record is unclear whether Sylvester Williams is related to John Williams or Decedent.

Sylvester Williams that day in her hallway over her, and that Sylvester Williams did threaten to kill [Decedent]…. I asked [Rena] would she want to come forward with what she knew about [Decedent's] death, [but] she responded as if she was still afraid of some people on the streets….

*Id.*, Exhibit B.

Some background is necessary to contextualize John Williams's affidavit. On December 31, 1981, Williams gave a statement to police indicating Appellant had confessed Decedent's murder to him. *See* N.T., 1/28/83, Commonwealth Exhibit 7. On June 3, 1982, Williams testified at Appellant's preliminary hearing, providing testimony consistent with his police statement. *See id.* at 75-80, 87-104 (wherein Williams's preliminary hearing testimony was discussed and quoted during Appellant's trial). However, prior to Appellant's trial, Williams expressed his reluctance to testify. *Id.* at 68.

During trial, Appellant's counsel told the trial court, "my office has interviewed [Williams]" and Williams "has, in fact, recanted whatever testimony he gave or statements that he gave." *Id.* at 69. Appellant's counsel produced a written statement signed by Williams, in which Williams claimed Appellant never confessed Decedent's murder to him. *Id.*; *see also id.*, Commonwealth Exhibit 9. Rather, Williams claimed he had "made it all up just to … get even with" Appellant, after Appellant had impregnated Williams's sister. *Id.* Williams claimed that after he told police Appellant confessed the murder, Williams "started thinking that I might have gone a little too far with the story[,] … so I started telling the cops that I kind of made it up and stuff[.]"

- 5 -

*Id.* He further claimed, "[T]hen [the cops] wouldn't let me get out of it because they start[ed] threatening me about all these robbery cases I had…." *Id.*

Williams testified at trial and denied Appellant ever confessed to shooting Decedent. *Id.* at 87, 106. Williams claimed he had no recollection of his December 31, 1981, statement to police or his preliminary hearing testimony. *See id.* at 87-106. After the prosecutor quoted significant portions of Williams's previous statement and testimony, Williams maintained that his recollection was not refreshed. *Id.* at 105. As a result of this "partial, if not total, memory loss," the trial court deemed Williams an unavailable witness and admitted his preliminary hearing testimony into evidence. Trial Court Opinion, 8/14/84, at 6-7; *see id.* at 7 (determining that "regardless of whether [Williams's] partial loss of memory indicated a conscious desire to withhold information, it rendered [Williams] 'unavailable' to testify at trial…."). On direct appeal, Appellant challenged the admissibility of Williams's preliminary hearing testimony; this Court affirmed. *Jones*, 496 A.2d 1177.

In his affidavit attached to Appellant's PCRA petition, Williams stated:

At [Appellant's] 1983 trial, I testified incorrectly that I had no memory of … the testimony I gave at [Appellant's] preliminary hearing…. The truth is I had lied when I testified at [Appellant's] trial that way, because I knew those questions that were asked of me and I knew those answers I gave at [Appellant's] preliminary hearing.

I was forced to testify at [Appellant's] trial that way, because I felt threatened, intimidated[,] and coerced … because of what I was told by the prosecutor and the detectives … about

- 6 -

perjury charges and being fined…. [A] week or two prior to [Appellant's] trial, … the prosecutor and the detectives had questioned me about the letter I sent to the District Attorney's Office and the letter I sent to [Appellant's] attorney's office informing them that I had lied at [Appellant's] preliminary hearing when I said [Appellant] told me that he killed [Decedent]. I was told I may face perjury charges and [be] fined for lying in court….

I lied when I told police and testified at [Appellant's] preliminary hearing that [Appellant] admitted to me [Decedent's murder]. I was afraid of doing time in prison for perjury and receiving a fine for such charges, so I testified falsely at [Appellant's] trial that I didn't remember what I testified to at [Appellant's] preliminary hearing, whe[n] in fact I knew what I testified to at the preliminary hearing.

PCRA Petition, 11/2/15, Exhibit 4.

Jones's affidavit merely corroborated Williams's. *Id.*, Exhibit 3. Jones stated that on September 1, 2015, Williams related to him substantially the same information set forth in Williams's affidavit. *Id.*

McKnight's affidavit stated, in pertinent part,

John Williams … lied about me being with him on December 23, 1981[,] in the 11th Street Hi-Rise building on the 11th floor, where [Williams]he claimed that he informed me that [Appellant] had spoke[n] with him claiming responsibility for killing [Decedent]. Such story is a total fabrication. … If I was [contacted] prior to [Appellant's] trial about John Williams['s] lie, I would have c[o]me forward and told the truth that [Williams] was lying….

*Id.*, Exhibit 2. Appellant alleged McKnight's affidavit "challeng[ed] the credibility of" Williams's preliminary hearing testimony. *Id.* at 3.[5]

_____

[5] At the preliminary hearing, Williams testified: "My two friends went up [to the eleventh floor] with me. They waited in the hallway, and I went into the
*(Footnote Continued Next Page)*

On August 4, 2017, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. The PCRA court stated the petition "is untimely filed and does not invoke an exception to the" PCRA's time-bar. Rule 907 Notice, 8/4/17. The PCRA court noted Appellant asserted the newly-discovered fact exception, but the court found he failed to demonstrate that the facts he relied upon were both "previously unknown prior to 2015 and previously unascertainable." *Id.* (citing 42 Pa.C.S.A. § 9545(b)(1)(ii)). The PCRA court determined Appellant failed to explain "why [he] waited nearly thirty years before presenting this claim." *Id.*

On August 24, 2017, Appellant filed a response to the Rule 907 notice, asserting, *inter alia*:

> Prior to 2015, I could not have discovered the information contained in [the affidavits of] John Williams, Darrell Jones, Tyrone Price, or David McKnight, … because its discovery depended on each of the respective parties coming forward with such information.

Response to Rule 907 Notice, 8/24/17, ¶ 4.

The record reflects that, following Appellant's response, the PCRA court took no action for approximately six years. On August 15, 2023, the PCRA court issued another Rule 907 notice of its intent to dismiss Appellant's

---

apartment," where Appellant confessed the murder. N.T., 1/28/83, at 98-99 (quoting preliminary hearing transcript). As the full transcript of Williams's preliminary hearing testimony is not included in the certified record, it is unclear whether he specifically identified McKnight as one of the two friends.

petition without a hearing.[6]  The PCRA court reiterated its conclusion that the petition was untimely and Appellant had failed to plead and prove any time-bar exception.  Rule 907 Notice, 8/15/23.  On September 11, 2023, the PCRA court filed an order and opinion dismissing the petition.

On September 19, 2023, Appellant filed a motion for leave to file a *nunc pro tunc* response to the Rule 907 notice, and attached his proposed response. The PCRA court did not act on the motion.  On September 27, 2023, Appellant filed a timely notice of appeal.  The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement.

Appellant raises six issues for our review:

1.  Did the PCRA court err by failing to accept [as true A]ppellant's pleadings in his PCRA petition, including supplemental filings …, and holding that [the petition] was untimely filed, where [Appellant] presented previously unknown facts he could not have discovered earlier and he filed [the petition] within sixty days of learning the new facts?

2.  Did the PCRA court err by analyzing the merits of [A]ppellant's PCRA claims for relief and improperly dismiss[ing] his PCRA petition/supplemental filings as untimely filed, without first holding an evidentiary hearing, to allow [Appellant] an opportunity to prove his entitlement to PCRA relief?

3.  Did the PCRA court err by misrepresenting the historical facts of [A]ppellant's case with extra[-]judicial evidence to deny him PCRA relief?

4.  Should the PCRA court have granted [A]ppellant an evidentiary hearing and the appointment of counsel to represent him where

---

[6] The Honorable Tracy Brandeis-Roman issued the PCRA court's August 4, 2017, notice.  The Honorable Scott DiClaudio issued the August 15, 2023, notice, as well as the September 11, 2023, order and opinion dismissing Appellant's petition.

he presented a *prima facie* case for PCRA relief on his actual innocence [claim] and a **Brady** violation/prosecution's use of known perjured testimony to convict [Appellant]?

5. Did the PCRA court deprive[ A]ppellant of an opportunity to respond to its August 15, 2023[,] Rule 907 Notice of Intent to deny/dismiss his PCRA petition, including supplemental filings, where the Rule 907 Notice was served upon him twenty-two (22) days after its entry?

6. Did the PCRA court err by not postponing [A]ppellant's PCRA proceedings after receiving letters from the Pennsylvania Department of Corrections' Chief Counsel requesting such postponement because its prison officers may have lost [Appellant's] legal materials that were critical to the outcome of his current PCRA proceedings?

Appellant's Brief at 2-3.

We review the dismissal of a PCRA petition to determine "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Id.**

Appellant's first two issues challenge the PCRA court's determination that his petition was untimely filed. Appellant's Brief at 13-46. Before reaching a PCRA petition's substantive merits, we must first consider its timeliness. **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014). "If a PCRA petition is untimely, a court lacks jurisdiction." **Commonwealth v. Reeves**, 296 A.3d 1228, 1230-31 (Pa. Super. 2023). A PCRA petition "shall be filed within one year of the date the judgment becomes final[.]" 42

- 10 -

Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

Appellant's judgment of sentence became final on December 24, 1986, ninety days after the Pennsylvania Supreme Court denied allowance of appeal, when Appellant's time to seek review in the United States Supreme Court expired. *See Jones*, 1018 E.D. Allocatur Docket 1985; *see also Commonwealth v. Reed*, 107 A.3d 137, 141 (Pa. Super. 2014) (citing U.S. Sup. Ct. R. 13). Appellant's November 2, 2015, petition is therefore facially untimely.

"However, a petitioner may overcome the PCRA's time-bar if he pleads and proves one of the statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)." *Reeves*, 296 A.3d at 1231.[7] One exception is that "the facts upon which the claim is predicated were unknown to the petitioner and could not

---

[7] Additionally, as this Court has observed:

> Any petition invoking one of the exceptions to the time bar must be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). Effective December 24, 2018, [Section] 9545(b)(2) was amended to provide that petitions invoking an exception must be filed within one year of the date the claim could have been presented. *See* Act 2018, Oct. 24, P.L. 894, No. 146. However, as the amended provision applies only to claims arising on or after December 24, 2017, the original 60-day time period governs in this case.

*Commonwealth v. Maxwell*, 232 A.3d 739, 745 n.8 (Pa. Super. 2020).

have been ascertained by the exercise of due diligence…." 42 Pa.C.S.A. § 9545(b)(1)(ii). This exception

> requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence.

*Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa. Super. 2019). Moreover, "the focus of this exception is on the newly discovered facts, **not on a newly discovered or newly willing source for previously known facts**." *Commonwealth v. Lopez*, 249 A.3d 993, 999 (Pa. 2021) (quotation marks and citation omitted; emphasis in original).

Appellant argues the PCRA court was required to accept as true his petition's allegations that the information set forth in the above-mentioned affidavits was previously unknown to him and could not have been ascertained by the exercise of due diligence. Appellant's Brief at 13-16. According to Appellant, his PCRA petition made clear that he first learned of the information in the Price, Jones, McKnight, and Williams affidavits in September and October of 2015. *Id.* at 16-19. Appellant also notes he alleged he did not learn the information in Wilson's affidavit until Wilson disclosed it to him in 2016. *Id.* at 20. Appellant argues that his claims were timely because he filed them within 60 days of his receipt of the information. *Id.* at 17-21, 28.

Appellant argues that

Price's information … was completely unknown to [A]ppellant prior to his 1983 trial and post[-]trial proceedings. Such information [] only became known to [A]ppellant in October of 2015, and [A]ppellant timely filed such information in his petition within sixty days of his learning of that information.

*Id.* at 32. Appellant argues the PCRA court erroneously "required [A]ppellant to have acted with 'due diligence' to discover evidence that did not exist." *Id.* He maintains that, in light of Price's December 23, 1981, statement to police, Appellant "had no reason to suspect" Price had other pertinent information not included in that statement. *Id.*; *see also id.*, Appendix D (Price's December 23, 1981, statement).

Regarding Price's affidavit, the PCRA court determined:

[Appellant] has failed to establish that the alleged fact at issue could not have been ascertained sooner through the exercise of due diligence. [Appellant] claims that he could not have discovered this information sooner[,] but offers no explanation as to why that is or what reasonable steps he took, if any, to protect his interests in the nearly thirty years between the final disposition of his case and the filing of [Appellant's PCRA] petition. *See* [Supplemental] PCRA Petition, 6/16/16, [at] 9. [Appellant] makes no attempt to explain what his relationship with [] Price is, if any, or why the information provided by [] Price was unascertainable for three decades. [Appellant's] boilerplate assertion that he could not have discovered the information earlier is not sufficient to establish due diligence for the purposes of the PCRA's time[-]bar exception. Accordingly, [the PCRA c]ourt finds that [Appellant] has failed to establish the newly discovered fact exception to the PCRA's timeliness requirement.

PCRA Court Opinion, 9/11/23, at 2-3.

The PCRA court's analysis is supported by the record. While Price's affidavit describes his reluctance to implicate "Chip" in 1981, it provides no

explanation as to why Price did not come forward until 2015.[8]  Appellant did not explain this delay, nor did he explain the circumstances under which he eventually came to learn Price's information.  Appellant claimed Wilson provided Price's affidavit to him, but Appellant failed to explain his relationship to Wilson, if any, or describe the efforts Wilson made to gather information on Appellant's behalf.  **See** Response to Rule 907 Notice, 8/24/17, ¶ 7. Accordingly, we discern no error in the PCRA court's conclusion that Appellant failed to establish that he could not have ascertained Price's information earlier by the exercise of due diligence.

We note that Price's affidavit additionally fails to satisfy the newly-discovered fact exception because it is, at most, "a newly discovered or newly willing source for previously known facts." **Lopez**, 249 A.3d at 999 (emphasis omitted).  In his first post-conviction petition, Appellant argued his trial counsel rendered ineffective assistance "for failing to investigate allegedly exculpatory evidence." **Jones**, 877 Philadelphia 1989 (unpublished memorandum at 3).

---

[8] In **Commonwealth v. Abu-Jamal**, 941 A.2d 1263 (Pa. 2008), a PCRA petitioner alleged a new witness's testimony could not have been ascertained earlier by the exercise of due diligence because "its discovery was dependent on" the witness "coming forward." **Id.** at 1266.  The Supreme Court determined the petitioner failed to establish the newly-discovered fact exception, in part because he "offer[ed] no explanation as to why [the witness], who asserted he was aware of [the facts stated in his affidavit] in 1984, did not come forward with this information until nearly 20 years later." **Id.** at 1269.

- 14 -

The evidence in question is a statement given to the police in September of 1982 by Mr. Isaiah Givens. Mr. Givens told the police that on the day following the murder, Sylvester "Chip" Williams showed him a gun and admitted to the murder of [Decedent].

*Id.* The PCHA court rejected Appellant's claim as frivolous, and this Court affirmed. *Id.* (unpublished memorandum at 3-4).[9] As Appellant had long-ago alleged Sylvester Williams perpetrated Decedent's murder, Price's affidavit would merely constitute "a newly discovered or newly willing source" for a previously known fact. *Lopez*, 249 A.3d at 999; *see also Maxwell*, 232 A.3d at 746.[10]

_____

[9] On August 25, 1982, Appellant, Isaiah Givens, and Portie Robertson targeted Sylvester Williams in a "drug-related" shooting. *Commonwealth v. Jones*, 610 A.2d 931, 935 (Pa. 1992). "Williams was not hit," but two innocent bystanders, "including one seven-year-old child, were killed and six others were seriously wounded." *Id.* Appellant, Givens, and Robertson were each subsequently convicted of, *inter alia*, two counts of first-degree murder. *Id.* Appellant was initially sentenced to death, but was later resentenced to two consecutive life sentences "after the Commonwealth elected not to re-pursue the death penalty following the grant of penalty phase relief during PCRA proceedings." *Commonwealth v. Jones*, 520 EDA 2013 (Pa. Super. 2014) (unpublished memorandum at 1).

[10] In *Maxwell*, we observed:

The only "new" aspect of [a]ppellant's claim was that a newly-willing testimonial source had come forward to corroborate a legal theory [a]ppellant raised decades before. Put another way, the fact that [a]ppellant discovered through [a new witness] yet another confirmatory source for the same claim he raised in no fewer than three prior post-conviction filings does not transform [a]ppellant's latest source of information into the type of fact falling within the scope of [Section] 9545(b)(1)(ii).

*Maxwell*, 232 A.3d at 746 (citations omitted).

- 15 -

As to the timeliness of his claim based on Wilson's affidavit, Appellant baldly claims that "[he] had no knowledge of Rena Bentley's information, and could not have discovered it by the exercise of due diligence, had [] Wilson not disclosed it to [him] in 2016." Appellant's Brief at 20 (quoting Response to Rule 907 Notice, 8/24/17, ¶ 9). The PCRA court rejected Wilson's affidavit as "an additional, more attenuated conduit for the same information" contained in Price's affidavit. PCRA Court Opinion, 9/11/23, at 2 n.2. Though the PCRA court did not conduct a separate timeliness analysis regarding Wilson's affidavit, it did note that Wilson's affidavit provided only a "secondhand account" of Bentley's "purported statement" to Wilson. *Id.*

Our review discloses that Wilson's affidavit suffers from the same timeliness deficiencies as Price's. Appellant never explained when or how either he or Wilson learned of Bentley's connection to Decedent's murder. Therefore, Appellant failed to establish he could not have ascertained Bentley's information earlier with the exercise of due diligence. Bentley's statement implicating Sylvester Williams is also merely another "newly discovered or newly willing source" for a previously known fact. *Lopez*, 249 A.3d at 999. Finally, Wilson's description of Bentley's statement is hearsay, and "a claim based on inadmissible hearsay does not implicate [the newly-discovered fact] exception." *Abu-Jamal*, 941 A.2d at 1269 (citing *Commonwealth v. Yarris*, 731 A.2d 581, 592 (Pa. 1999)).

As to John Williams's affidavit, Appellant argues "his claim is clearly not about [Williams's] recantation of his preliminary hearing testimony *per se*." Appellant's Brief at 37. Rather, "the crux of [A]ppellant's claim" is Williams

> stating he "lied" at [A]ppellant's trial; … that he "was forced to" lie … because he was "threatened, intimidated and coerced" by the … prosecutor [and] detectives[; and Williams] notifying the District Attorney's Office by way of a 'letter' sent to it months before [A]ppellant's trial[11] that his preliminary hearing testimony was false, and the prosecution's failure to disclose this material fact to the defense prior to or during the trial….

*Id.* at 37-38 (footnote added). Appellant "contends that there was no information available to the PCRA court … [from] which it could conclude or suggest that [A]ppellant was aware of" the above facts before September 9, 2015 (the date of Williams's affidavit). *Id.* at 41.

Regarding Williams's affidavit, the PCRA court determined:

> [The PCRA c]ourt finds that [Appellant] has failed to satisfy the requirements of 42 Pa.C.S.A. § 9545(b)(1)(ii) because he has failed to establish that the alleged fact underlying his time[-]bar claim was previously unknown. Instantly, the record indicates that John Williams disavowed his preliminary hearing testimony at [Appellant's] trial in 1983. N.T., 1/28/83, [at] 87. [Appellant] has failed to explain how a purported fact that a witness testified to at his own trial more than thirty years ago could be previously

_____

[11] Williams's affidavit did not allege he sent the letter months before the trial. The affidavit stated: "**Like a week or two prior to [Appellant's] trial**, … the prosecutor and the detectives had questioned me about the letter I sent to the District Attorney's Office **and the letter I sent to [Appellant's] attorney's office** informing them that I had lied at [Appellant's] preliminary hearing…." Petition, 11/2/15, Exhibit 4 (emphasis added). Nothing about Williams's affidavit suggests his letter to the prosecutor was sent any earlier or contained any different information than the letter he sent to Appellant's counsel.

unknown to him. Thus, [Appellant] failed to establish the newly discovered fact exception on the basis of this claim….

Furthermore, … [Appellant] does not even attempt to explain why he could not have discovered [Williams's] letter [to the prosecutor] sooner[,] despite being aware of Williams'[s] connection to the case and the fact that he disavowed his preliminary hearing testimony at least as early as 1983. [Appellant] also fails to offer any explanation as to what reasonable steps he took, if any, to protect his interests in the nearly thirty years between the final disposition of his case and the filing of this petition. Therefore, [the PCRA c]ourt finds that [Appellant] has failed to establish the newly discovered fact exception to the PCRA's timeliness requirement.

PCRA Court Opinion, 9/11/23, at 4-5.

The PCRA court's analysis is supported by the record. Attempting to circumvent this analysis, Appellant maintains his claim is based not on Williams's recantation of his preliminary hearing testimony, but on Williams's admission that he lied at trial when he testified he did not remember his prior testimony. Appellant's Brief at 37-38. As to the timeliness of the petition, this distinction is without a difference.[12] Our review of the record discloses Appellant either knew or should have known at the time of trial that Williams's testimony claiming no memory of his prior testimony was less than truthful. On the eve of trial, Williams gave a written statement to Appellant's counsel,

_____

[12] Williams's admission that he lied at trial about his memory loss is also not relevant to the underlying substantive issue, *i.e.*, the admissibility of his preliminary hearing testimony, which Appellant acknowledges "was the prosecution's crucial piece of evidence … it needed to obtain" Appellant's conviction. Appellant's Brief at 43. The trial court determined that, even if Williams's purported memory loss "indicated a conscious desire to withhold information," it still rendered his preliminary hearing testimony admissible. Trial Court Opinion, 8/14/84, at 7.

- 18 -

claiming Williams told police he "made up" "the story" he initially gave them. N.T., 1/28/83, Exhibit 9. In the same statement, Williams claimed police "start[ed] threatening" him when he changed his story. *Id.* Additionally, Williams's affidavit did not allege his pre-trial letter to the prosecutor contained any information Appellant did not already know at the time of trial. Accordingly, Appellant did not establish that Williams's affidavit disclosed previously unknown facts.

Our review also confirms the PCRA court's finding that Appellant failed to establish he acted with due diligence regarding Williams. Though Appellant knew Williams was "the prosecution's key witness," Appellant's Brief at 49, he apparently made no effort to contact Williams in the 32 years between his trial and Williams's September 2015 affidavit. Appellant never explained Williams's delay in coming forward, nor did he describe how he came into possession of Williams's affidavit. Appellant thus failed to establish he could not have ascertained Williams's information earlier had he exercised due diligence.

As to Jones and McKnight, Appellant relies on his bald assertion that he did not know Jones's and McKnight's information before receiving their affidavits, and he filed his claims within 60 days of receiving the affidavits. Appellant's Brief at 16-18. Though it did not conduct a separate timeliness analysis, the PCRA court rejected the Jones and McKnight affidavits as "merely

additional[,] more attenuated conduits for the same information" contained in Williams's affidavit. PCRA Court Opinion, 9/11/23, at 4 n.6.

Our review confirms that Jones's affidavit, which contains substantially the same information as Williams's affidavit, suffers from the same timeliness deficiencies. Moreover, as Jones's affidavit merely relates what Williams told him, it is also hearsay. **See Abu-Jamal**, 941 A.2d at 1269.

McKnight's affidavit is untimely because it is a "newly discovered or newly willing source" for a previously known fact, *i.e.*, that Williams falsely testified at the preliminary hearing. **Lopez**, 249 A.3d at 999. Moreover, McKnight's affidavit reveals Appellant's lack of due diligence as to McKnight's potential testimony. If Williams identified McKnight in his preliminary hearing testimony, then Appellant would have known, prior to his trial, that McKnight could have either corroborated or challenged Williams's testimony. In his affidavit, McKnight attested that if he had been contacted prior to Appellant's trial, he was willing to testify that Williams had lied. **See** PCRA Petition, 11/2/15, Exhibit 2. Appellant's petition failed to explain why he could not have discovered McKnight's testimony earlier with the exercise of due diligence. McKnight's affidavit makes clear that, had Appellant exercised due diligence, he could have secured McKnight's testimony at his 1983 trial.

For the above reasons, we conclude Appellant failed to establish the newly-discovered fact exception as to any of the five affidavits attached to his PCRA petition and supplemental petition. We therefore affirm the PCRA court's

determination that the petition was untimely filed. The timeliness arguments advanced in Appellant's first and second issues merit no relief.

In his second[13] and third issues, Appellant argues the PCRA court improperly engaged in a "merits analysis" of his alleged new evidence, and "misrepresent[ed]" the underlying facts. *See* Appellant's Brief at 33-47. However, our review discloses the PCRA court opined, **in the alternative**, that even if Appellant's claims were timely, his new evidence was not exculpatory. *See* PCRA Court Opinion, 9/11/23, at 2, 3 n.4. Because we affirm the PCRA court's determination that Appellant's petition was untimely, we do not reach these issues.

In his fourth issue, Appellant maintains the PCRA court erred in not conducting an evidentiary hearing, which would have "allow[ed A]ppellant to more fully explore the underlying material issues of fact … relating to the information contained in" the affidavits attached to Appellant's PCRA petition. Appellant's Brief at 48-49. As this Court has observed,

> a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion. … It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there

_____

[13] Appellant's second issue advances arguments regarding his petition's timeliness (addressed above) and its underlying merits. *See* Appellant's Brief at 22-46.

- 21 -

were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. An evidentiary hearing is not meant to function as a fishing expedition….

*Miller*, 102 A.3d at 992 (citations and brackets omitted). Here, as the PCRA court properly determined Appellant's petition was untimely filed, we discern no abuse of discretion in its denial of an evidentiary hearing. Accordingly, Appellant's fourth issue merits no relief.[14]

In his fifth issue, Appellant argues the PCRA court erred in depriving him of an opportunity to respond to its August 15, 2023, Rule 907 notice. Appellant's Brief at 51-52. In his September 19, 2023, motion for leave to file a *nunc pro tunc* response, Appellant alleged the PCRA court did not mail the notice to him until August 31, 2023, and that he did not receive it until September 6, 2023. *See* Motion, 9/19/23; *see also id.*, Exhibit 1 (envelope addressed to Appellant from the PCRA court, postmarked August 31, 2023).

Pa.R.Crim.P. 907(1) provides:

[T]he judge shall promptly review the [PCRA] petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice

_____

[14] Appellant's fourth issue also questions the PCRA court's failure to appoint counsel to represent him, but his brief develops no argument on this point. *See* Appellant's Brief at 47-51. We note that, "[o]n a second or subsequent [PCRA] petition," an unrepresented defendant is not entitled to appointment of counsel unless "an evidentiary hearing is required…." Pa.R.Crim.P. 904(D).

the reasons for the dismissal. **The defendant may respond to the proposed dismissal within 20 days of the date of the notice.** The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1) (emphasis added).

Our review of the record discloses the PCRA court's apparent delay in serving its August 15, 2023, notice on Appellant may have prevented him from filing a timely response. However, a PCRA court's "failure to issue Rule 907 notice is not reversible error where the record is clear that the petition is untimely." ***Commonwealth v. Zeigler***, 148 A.3d 849, 851 n.2 (Pa. Super. 2016); ***see also Commonwealth v. Lawson***, 90 A.3d 1, 5 (Pa. Super. 2014) ("[O]ur Supreme Court has held that where the PCRA petition is untimely, the failure to provide [Rule 907] notice is not reversible error." (citing ***Commonwealth v. Pursell***, 749 A.2d 911, 917 n.7 (Pa. 2000))). As we have determined Appellant's petition is patently untimely, he is not entitled to relief under Rule 907.[15]

In his sixth issue, Appellant argues the PCRA court erred in not postponing his PCRA proceedings, based on a letter the PCRA court received from the Department of Corrections (DOC). ***See*** Appellant's Brief at 52-55.

_____

[15] Moreover, it is not clear that the PCRA court failed to comply with Rule 907. The PCRA court initially provided Rule 907 notice on August 4, 2017, and Appellant filed a response on August 24, 2017. Our review discloses the PCRA court's 2023 notice was substantially similar to its 2017 notice, and Appellant's proposed *nunc pro tunc* response to the 2023 notice raised no new, relevant issues.

Appellant's proposed *nunc pro tunc* response to the August 15, 2023, Rule 907 notice attached an August 24, 2018, letter authored by DOC Deputy Chief Counsel Timothy Holmes. The letter stated that when DOC transferred Appellant from SCI-Graterford to SCI-Phoenix,

> a number of items of inmate property were inadvertently lost or misplaced, probably including [Appellant's] legal materials related to this case. … In light of these issues, [DOC] respectfully requests that this Honorable Court extend any deadlines related to this legal matter.

Proposed *Nunc Pro Tunc* Response, 9/19/23, Exhibit 1 (DOC Letter, 8/24/18). Appellant asserts that the lost materials included a 2018 affidavit by another new witness, Jacqueline Hargrove, identifying Sylvester Williams as the perpetrator of Decedent's murder. *Id.* at 13-15; *see also* Appellant's Brief at 53.

Appellant failed to raise this issue in the PCRA court prior to his September 19, 2023, proposed *nunc pro tunc* response. Even if that response was deemed timely, the issue would merit no relief. We observe that (1) the PCRA court took no action for approximately *five years* following the DOC letter; (2) Appellant did not request a postponement at any time during that five-year period; and (3) Appellant's argument regarding Ms. Hargrove's supposed 2018 affidavit has no bearing on the timeliness of his 2015 petition.

For the foregoing reasons, we discern no error or abuse of discretion in the PCRA court's decision to dismiss Appellant's petition as untimely filed.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>9/13/2024</u>